Gary Cooley was indicted for robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment," and the trial judge set sentence at thirty-five years' imprisonment in the penitentiary.
On December 19, 1980, between 7 and 7:30 a.m., two black males entered Hendrix's Service Station. One of the men had a shotgun and wore a "brown floppy hat." The two men took $625 from Maggie Hendrix. The men left in a tan over tan Chevrolet.
Charles Harris, a Clay County deputy sheriff, received a description of the suspects and their automobile from Mrs. Hendrix. He went to a nearby store and was given the name of a person in Randolph County who owned a car similar to the one Mrs. Hendrix and another witness had described to him.
Harris then went to the residence of Earl Houston. An automobile, which matched Mrs. Hendrix's description, was parked in the yard. A shotgun was on the front seat. The appellant was at Houston's home at this time, and he fit the description of one of the suspects. Houston gave Harris permission to search his residence, and Harris found a "brown floppy felt" hat.
The appellant and James Boyd voluntarily went with Harris back to Hendrix's store. They were not placed under arrest or in custody, but they were given their Miranda rights on the way to the store.
At the store, Mrs. Hendrix stated she thought that the appellant was the one who had robbed her store, but she was not sure. She said she was positive the hat was the same one worn by one of the robbers. At this time, the appellant was placed under arrest.
At trial, Mrs. Hendrix positively identified the appellant as one of the robbers. She stated she had told Harris that she was not sure at her store because she was afraid to sign the warrant.
The defense put on several alibi witnesses, and the appellant denied any involvement in the robbery.
 I
The appellant contends that the trial court erred in denying his motion to suppress because the appellant gave information to the police before he was informed of his Miranda rights.
Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), assures that incriminating statements, elicited from an accused during custodial interrogation, may not be used against him at trial unless the prosecution presents evidence that the accused was informed of the rights set out in Miranda, supra, which are intended to protect the right against self-incrimination.
First, we must state that we cannot determine from the appellant's motion to suppress or his brief what information the appellant wishes to suppress. From our examination of the record, we cannot find any evidence that the State sought to introduce a statement made by the appellant or that the appellant gave a statement to the police.
Secondly, the appellant voluntarily consented to return to Mrs. Hendrix's store with Officer Harris. During that trip, he was given his Miranda rights. There is no indication that theMiranda rights were improperly given.
Therefore, for the reasons stated above, Miranda v. Arizona, supra, has no application to this issue.
 II
The appellant alleges Mrs. Hendrix's in-court identification should have been suppressed because he was subjected to an impermissively suggestive pretrial identification (e.g., a one-man showup). *Page 195 
 "Whether an out-of-court identification procedure has violated due process depends upon the `totality of the circumstances.' Stovall [Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)]; Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Coleman [Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970)]; Biggers [Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)]. This totality of the circumstances test is the standard in deciding whether an identification procedure is unnecessarily suggestive and conducive to irreparable mistaken identification. Caver v. Alabama, 537 F.2d 1333 (5th Cir. 1976).
 "In determining the constitutional adequacy of pretrial identification procedures and the admissibility of identification testimony, the central question is whether, under the totality of the circumstances, the identification was reliable. Manson [Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)]. This determination involves the application of a two-pronged test.
 "[T]he required inquiry is two-pronged. The first question is whether the initial identification procedure was `unnecessarily' [Stovall] or `impermissibly' [Simmons] suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to have been `unnecessarily' or `impermissibly' suggestive was so `conducive to irreparable mistaken identification' [Stovall] or had such a tendency `to give rise to a very substantial likelihood of irreparable misidentification' [Simmons] that allowing the witness to make an in-court identification would be denial of due process. United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir. 1970)." Brazell v. State, 369 So.2d 25 (Ala.Cr.App. 1978).
In Hobbs v. State, 401 So.2d 276 (Ala.Cr.App. 1981), this court held that:
 "Although a showup is inherently suggestive, it is also considered to be consistent with good police work when done promptly after the commission of the crime. Donahoo v. State, Ala.Cr.App., 371 So.2d 68; Robinson v. State, 55 Ala. App. 658, 318 So.2d 354; Cornelius v. State, 49 Ala. App. 417, 272 So.2d 623. . . .
 "Judge Burger, now Chief Justice of the Supreme Court of the United States, in Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104, stated:
 "`There is no prohibition against a viewing of a suspect alone in what is called a "one-man showup" when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy.
"`. . .
 "`[T]he police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. . . .'
 "Although the use of the showup is a suggestive identification procedure, it can also be a procedure which tends to enhance the reliability of the identification. Bates v. United States, supra; Carter v. State, Ala.Cr.App., 340 So.2d 94."
The appellant was returned to Mrs. Hendrix's store only several hours after the robbery occurred. This was a reasonable amount of time since the events of that morning were certainly still fresh in Mrs. Hendrix's mind. See Brazell, supra. Therefore, the mere fact that the appellant was subjected to a one-man showup does not necessarily render that identification procedure impermissively suggestive.
The appellant contends that requiring the appellant to put on a hat similar to the one worn by one of the robbers was unnecessarily suggestive. However, the mere fact that an accused wears a distinctive article of clothing does not by itself *Page 196 
taint a one-on-one identification procedure. Brazell, supra.
We conclude that the pre-trial identification procedure was not impermissively suggestive and, therefore, Mrs. Hendrix's in-court identification of the appellant was properly admitted.
Assuming arguendo, that we had found the out-of-court identification to be impermissibly suggestive, we would still hold that Mrs. Hendrix's identification of the appellant was reliable.
 "Whether an in-court identification has been so tainted by an extrajudicial identification as to vitiate the in-court identification is not to be determined solely by the circumstances of the extrajudicial identification, but all of the circumstances relative to the identification of defendant by the witness are to be taken into consideration, and if it is determinable therefrom that an in-court identification was independent of the extrajudicial identification, evidence of the in-court identification is admissible. Matthews v. State, 361 So.2d 1195 (Ala.Cr.App. 1978)." Raines v. State, 428 So.2d 206 (Ala.Cr.App. 1983).
The fact that Mrs. Hendrix stated she was not absolutely sure the appellant was the robber when she saw him initially, does not mean that her in-court identification must be excluded.Hobbs, supra. Furthermore, Mrs. Hendrix stated she knew the appellant was one of the robbers when she first saw him, but she was afraid to sign the warrant, so she told Officer Harris she was not sure about the appellant.
Mrs. Hendrix's in-court identification of the appellant was based on her eye-witness observation and confrontation with him on the day of the robbery. At trial, she stated she was absolutely positive the appellant was one of the men who robbed her store. Based on our application of the factors set out inNeil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401
(1972), we hold Mrs. Hendrix's in-court identification of the appellant was reliable and independent of the pre-trial identification procedure.
Therefore, the trial judge properly denied the appellant's motion to suppress.
 III
The appellant argues the trial judge erred when he asked the appellant, during the suppression hearing, to stand up and repeat the words, "I'll kill you if you don't do what I tell you to do."
This contention rests on the ground that requiring the appellant to utter these words, which were allegedly used by the man who robbed Mrs. Hendrix, violated his Fifth Amendment privilege against self-incrimination.
 ". . . The Fifth Amendment privilege against self-incrimination `protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . .' Schmerber v. State of California, 384 U.S. 757, 761, 86 S.Ct. 1826 [1830] 16 L.Ed.2d 908." Coleman v. State, 44 Ala. App. 429, 211 So.2d 917 (1968).
The United States Supreme Court stated in United States v.Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), that:
 "We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. . . . [C]ompelling Wade to speak within hearing distance of the witness, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a `testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. We held in Schmerber, supra, 384 U.S. at 761, 86 S.Ct. at 1830, that the distinction to be drawn under the Fifth Amendment privilege against self-incrimination is one between an accused's `communications' in *Page 197 
whatever form, vocal or physical, and `compulsion which makes a suspect or accused the source of "real or physical evidence,"' Schmerber, supra, at 764, 86 S.Ct. at 1832. We recognized that `both federal and state courts have usually held that . . . [the privilege] offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' Id., at 764, 86 S.Ct. at 1832." (Emphasis added.)
The appellant in this case "was not asked, much less compelled, `to give evidence against himself.' The sole object of the request was to afford the witness, [Mrs. Hendrix] . . . an opportunity of seeing the [appellant], and hearing the sound of his voice, so that she might the more intelligently testify whether he was or was not the man by whom she was confronted. . . ." Johnson v. Commonwealth, 115 Pa.St. 369, 9 A. 78 (1887).
The statement uttered by the appellant at the suppression hearing was not of a testimonial nature and did not have any testimonial significance. State v. Lacoste, 256 La. 697,237 So.2d 871 (1970). The appellant did not relate any facts tending to connect him with the robbery, and the mere utterance of the statement did not indicate the appellant had any independent knowledge of the facts of the robbery. Biggers v.State, 219 Tenn. 553, 411 S.W.2d 696 (1967). The only purpose in requiring the appellant to speak was so that Mrs. Hendrix might possibly use the sound of his voice as an identifying physical characteristic. Coleman, supra. For an excellent discussion of this issue, see Judge Cates's special concurrence in Coleman, supra.
Moreover, we must note that the appellant was not required to exhibit himself or speak those words in front of the jury, and nothing was introduced at trial indicating that Mrs. Hendrix identified the appellant after she heard him speak. Therefore, we cannot see how the appellant was compelled to testify against himself in this instance. We find no error for reversal in this issue.
We have examined the record and find it free of error. Therefore, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.