Jimmy Berry, the appellant, was convicted for the unlawful distribution of cocaine in violation of Ala. Code 1975, §13A-12-211, and was sentenced to 15 years' imprisonment as a habitual felony offender. He raises two issues on this appeal from that conviction.
 I
The appellant argues that the trial court committed reversible error in refusing to require the State to disclose the identity of the confidential informant and in refusing *Page 1271 
to allow him to call that informant to testify as a witness for the defense.
Initially we note that the appellant never made a request to call the informant as a witness. Therefore, we do not consider that particular aspect of this issue preserved for appellate review. The issue on appeal is thus limited to whether the trial court should have required the State to disclose the identity of the confidential informant.
The appellant did not file a motion specifically seeking the disclosure of the identity of the informant prior to trial. He did file a pro se motion for discovery that sought, among other things, "[t]he names and current addresses of all persons who made any statement to the prosecution or to any other law enforcement agency, or provided the prosecution or any other law enforcement agency with any information which is in any way relevant to the charges in the indictment, and the contents of any such statements or the nature of any information." However, we do not consider this motion to be a specific request for the disclosure of the identity of the informant. The appellant does not argue to the contrary. Prior to trial, the appellant also filed a pro se motion to suppress in which he alleged, in effect, that there was no probable cause for his arrest because the informant was not reliable.
At trial, Alcohol Beverage Control Board Agent John Richardson testified that, in July 1989, he was a narcotics detective with the Opelika Police Department, but was working as an undercover agent for the Dothan Police Department. On the evening of July 6, 1989, Richardson and an informant drove to the "Dixie" area of Dothan "[t]o buy drugs." Around 11:00 p.m., Richardson parked the car he was driving across the street from the Gemini Libra Club. The appellant, who had been standing nearby with one Frank Collins, approached the passenger's side of the car and asked if they "needed anything." Richardson told the appellant he wanted "a fifteen cent piece." The appellant walked back to where Collins was standing, then returned to the car and gave Richardson "a compressed substance," later determined to be crack cocaine. Richardson gave the appellant a $20 bill and, after making another trip to where Collins was standing, the appellant gave Richardson $5 in change. Richardson unequivocally identified the appellant as the person who sold him crack cocaine.
Approximately an hour before purchasing cocaine from the appellant, Richardson, accompanied by the informant, had purchased crack cocaine from Collins. The appellant was standing with Collins at the time of that earlier transaction. On direct examination, Richardson testified that the informant had "introduce[d]" him to "the [drug] dealers," although he did not specify when his introduction to the appellant took place. On cross-examination, he stated that neither he nor the informant said anything to the appellant before the appellant walked over to the car and sold him the "fifteen cent piece."
The first specific request for the disclosure of the identity of the informant was made by defense counsel during cross-examination of Agent Richardson:
 "Q. Now, so the only way that you know of this name [the appellant's] was because this . . . confidential informant — you don't want to tell me his name, do you?
 "MR. BINFORD [assistant district attorney]: Judge, I would object. And the State does not want his name brought out in court, and I would object to any questions about his identity.
"THE COURT: Sustained."
Defense counsel thereafter elicited from Agent Richardson the facts that the confidential informant was a Dothan citizen and was working with Richardson because he had been arrested for public drunkenness. The informant was paid a total of $800 for information he provided in a number of cases.
During further cross-examination, the following occurred:
 "Q. [by defense counsel] Now, I want to go back one more time to the confidential informant. He was in the automobile when this gentleman gave you the *Page 1272 
fifteen-dollar rock and he had to have seen what took place?
"A. I'm sure he did.
 "Q. Okay. Would you give the jury, please, the confidential informant's name?
"MR. BINFORD: We object, Your Honor."
The trial court then declared a recess. After much discussion and argument between the parties, the trial judge stated that he was going to hold a hearing on the appellant's motion to suppress. Defense counsel then stated:
 "Judge, at this time on the record we would withdraw our motion for a hearing to suppress, but we would ask that the Court hold an in camera determination [sic] if, in fact, the confidential informant has any exculpatory knowledge that would help my client."
This matter was not pursued until after the State had rested and the trial court had denied the appellant's motion for a judgment of acquittal. At that time, the trial judge interviewed the informant in chambers, with the prosecutor and the court reporter also present. At the beginning of this interview, the trial judge stated: "Let the record show I'm interviewing the informant in this case in chambers to ascertain what his testimony is to see if his identity should be revealed."
In response to the trial judge's instruction to "[t]ell me what happened," the informant initially replied:
 "Well I don't exactly, you know, remember that because we worked, you know, a lot of cases that day, you know, we bought — but like I said,[1] I went out and asked who had it, and so he came to the car. I brought him back to the car, and he sold it to John Richardson." (Footnote added.)
However, the informant's responses to subsequent questioning by the trial judge indicates that the informant did not "bring" the appellant to the car:
 "Q. [by the Court:] How did you and Officer Richardson decide to go up to Jimmy Berry and ask him for any —
 "A. Well, all the people, you know, you could tell the ones that was selling it. They stand outside. You know, they stand out — now, they wave at you when you ride through there.
"Q. I see. Did Jimmy Berry wave at you-all?
 "A. Well, yeah, he gave us the sign, you know, like, you know, he had it.
"Q. What kind of sign?
 "A. Well, he just, you know, like that (indicating), you know, if you go through there, you know.
"Q. Nods his head?
"A. Yes. (Indicating.)
 "Q. Oh, I see. Put your head like that and that means he has got something?
"A. That's right. (Indicating.)
 "Q. And what did you-all do? Just pull up in the car or what?
"A. Yes, sir. Pulled in the car [sic].
"Q. Okay. And where was Officer Richardson at?
"A. He was on the driver's side.
"Q. And you were sitting on the passenger's side?
"A. Right.
"Q. And then what did Mr. Berry do?
 "A. Berry, he walked over to the car, you know. John told him he wanted a fifteen-dollar piece, so he walked back over there and got it from this guy, Frank Collins, and brought it back and gave it to [Richardson]."
During this interview, it was established that the informant knew the appellant because they had gone to high school together. The informant testified that he received about $800 from "the City" for information in some 30 cases, but that he had not been paid on a per case basis. He stated that he was afraid that he would be in danger if his name were revealed because his brother was presently in jail for burglary and because he had testified in *Page 1273 
open court in one other case and "they talked about it . . . on the streets" and he had "to watch [him]self."
At the conclusion of the interview, the trial judge stated: "I'm going to find that his — after conducting an in camera interview with the informant, that his testimony would not be beneficial to the defendant and, in fact, it would hurt the defendant as well as endanger the informant and the informant's family who has a member in the jail also." In open court, but out of the presence and hearing of the jury, the trial judge informed the appellant and his counsel that the "informant's testimony would not be beneficial to Mr. Berry. In fact, it would hurt Mr. Berry. Furthermore, it would endanger the informant's family, so I am going to deny the motion to produce the informant."
It is well recognized that the prosecution has the privilege to withhold the identification or production of persons who furnish information to law enforcement officers. SeeRoviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627,1 L.Ed.2d 639 (1957). See generally United States v. Herrero,893 F.2d 1512, 1525 (7th Cir.), cert. denied, ___ U.S. ___,110 S.Ct. 2623, 110 L.Ed.2d 644 (1990). However, this privilege is not absolute. "Where the disclosure of an informer's identification, or of the contents of his communication, isrelevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro, 353 U.S. at 60-61, 77 S.Ct. at 628
(emphasis added). In Roviaro, the United States Supreme Court refused to establish a "fixed rule" for disclosure of informant identity, noting that
 "[t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."
353 U.S. at 62, 77 S.Ct. at 628-29.
While the prosecution's privilege to withhold an informant's identity may be defeated, "the burden is on the defendant to demonstrate the need for the disclosure." United States v.Fixen, 780 F.2d 1434, 1439 (9th Cir. 1986), quoted in Lightfootv. State, 531 So.2d 57, 59 (Ala.Cr.App. 1988). The appellant did not, at trial, make any showing as to the informant's expected testimony, state how he thought the informant's testimony could help his case, or otherwise demonstrate any "need for the disclosure." However, he did request that the trial court make an in camera determination as to whether the informant had any exculpatory knowledge.
In cases such as this, where the informant is more than a "mere tipster," but less than the only other participant in the charged crime,[2] an in camera hearing is an appropriate way to perform the Roviaro balancing test. Lightfoot, 531 So.2d at 58. The defense in this case was misidentification.[3] Because the informant was a witness to the transaction, he was clearly in a position to provide testimony which was relevant to the issue of identity. See, e.g., Jones v. State, 192 Ga. App. 186,384 S.E.2d 273, 274 (1989); Ponder v. State, 191 Ga. App. 346,381 S.E.2d 534, 535 (1989); State *Page 1274 v. Wandix, 590 S.W.2d 82, 86 (Mo. 1979), cert. denied,445 U.S. 972, 100 S.Ct. 1665, 64 L.Ed.2d 248 (1980). However, the informant's in camera testimony with regard to the issue of identity was not helpful to the appellant, and, as the trial court noted, was, in fact, damaging to the appellant.[4]
We note that the informant's testimony was somewhat internally inconsistent as to how the transaction transpired and that his initial testimony conflicted with Agent Richardson's testimony that neither he nor the informant said anything to the appellant prior to the the appellant's approaching their car. However, these inconsistencies would not be helpful to appellant's defense of misidentification. Cf.People v. Casiel, 42 A.D.2d 762, 346 N.Y.S.2d 349, 351, appeal dismissed, 33 N.Y.2d 791, 350 N.Y.S.2d 654, 305 N.E.2d 776
(1973) (although in camera hearing revealed that informant's testimony was inconsistent with officer's testimony "with regard to tangential details," informant's testimony did confirm that a drug sale took place and thus would not be useful to defendant "in bolstering his contention that no sale took place"). While the informant's testimony that he "brought" the appellant to Richardson's car might have lent minimal support to a defense of entrapment, this testimony was later contradicted by the informant himself. Moreover, the appellant utilized the defense of misidentification, which is factually inconsistent with the defense of entrapment, and has made no allegation on appeal that he would have plead entrapment had he known of this testimony. See United States v. Diaz,655 F.2d 580, 588 (5th Cir. 1981), cert. denied, 455 U.S. 910,102 S.Ct. 1257, 71 L.Ed.2d 448 (1982) (defendant must make a sufficient showing that informant's testimony would significantly aid defendant in establishing an asserted defense). Compare Keenerv. Commonwealth, 8 Va. App. 208, 212-13, 380 S.E.2d 21, 24-26
(1989) (prosecution should have disclosed identity of informant where defendant would have asserted entrapment defense had he known person with whom he was dealing (a former girlfriend) was an informant).
In this case, the officer's identification of the appellant was positive and unequivocal; the informant's testimony would not have been helpful to the appellant's misidentification defense; and the trial judge determined that identification of the informant would jeopardize his safety. Considering these circumstances, as required by Roviaro, and the appellant's failure to demonstrate any need for the disclosure of the informant's identity, we are of the opinion that there was no error in the trial court's refusal to require the disclosure of the informant's identity. However, even if, as the appellant asserts, the informant was an active participant in the sale and therefore a material witness whose identity should have been disclosed, it would not be necessary for us to reverse the appellant's conviction. The informant's in camera testimony clearly shows that the appellant was not prejudiced by the nondisclosure of his identity. Consequently, any error in this nondisclosure would have been harmless. Rule 45, A.R.App.P. Cf.United States v. Barnes, 486 F.2d 776, 780 (8th Cir. 1973) (where government failed to disclose identity of informant who was material witness, court would not reverse for new trial, but would remand for factual determination of whether defendant was prejudiced by nondisclosure); United States v. Kitchen,488 F.2d 572, 575 (8th Cir. 1973) (same); Moore v. State,187 Ga. App. 387, 370 S.E.2d 511, 515-16 (1988) (where no in camera hearing was held at trial and identity of informant should have been disclosed under Roviaro, appellate court remanded for in camera hearing of informant's testimony and determination of whether error of nondisclosure was harmless); Ponder v. State,191 Ga. App. 346, 381 S.E.2d 534, 535 *Page 1275 
(1989) (same); Jones v. State, 192 Ga. App. 186,384 S.E.2d 273, 274 (1989) (same).
As part of this issue, the appellant also asserts that the prosecution was not entitled to assert the privilege of confidentiality because this informant's own testimony showed that he had previously testified in another case and, consequently, the privilege had been waived. "[O]nce the identity of the informer has been disclosed to those who wouldhave cause to resent the communication, the privilege is no longer applicable." Roviaro, 353 U.S. at 60, 77 S.Ct. at 627
(emphasis added). Clearly, if an informant testifies at the trial of an accused, the prosecution cannot continue to assert the privilege of confidentiality against that accused. SeeSmith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956
(1968). We have found no cases, nor has appellant provided us with any, holding that the prosecution is not entitled to assert the privilege of confidentiality once an informant testifies, even if that testimony is against a different accused in an unrelated case. Assuming, however, that that is true, it simply means that the informant was an ordinary witness which the State had no obligation to call. See Bartonv. State, 494 So.2d 943, 950 (Ala.Cr.App. 1986). Furthermore, since the informant's testimony was not exculpatory, no disclosure of his existence was required under Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 II
The appellant argues that the trial court committed reversible error in refusing to allow him to read to the jury a passage from a reported criminal case. The alleged purpose of this reading was for voice identification, not for "testimonial purposes" or the truth of the matter read, so that the jury could decide whether it was the appellant's voice on a tape recording of the transaction with Agent Richardson. We find no error in the trial court's refusal to permit such a practice.
Agent Richardson was "wearing a wire" at the time of the drug transaction with the appellant and their conversation was tape-recorded. The three-minute recording was played for the jury during the State's presentation of evidence at the request of defense counsel. The actual tape recording was not marked as an exhibit, was not introduced into evidence, and is not contained as a part of the record on appeal.
Officer Antonio Gonzales was operating the tape-recording equipment when Agent Richardson purchased the cocaine from the appellant. Gonzales testified at trial that he could not recognize the appellant's voice on the tape recording. Additionally, Gonzales could not identify the appellant as the person who sold Richardson the cocaine, apparently because he was not close enough to "make facial identification." At trial, Agent Richardson positively identified the appellant based on his face-to-face encounter with the appellant at the time of the sale. Neither he nor any other witness identified the appellant by his voice.
When the defense was asked to call its first witness, defense counsel stated: "Your Honor, at this time I would like to make a motion that my client, who is not going to testify, read a statement — read a prepared text out of the case that I have just provided to the Court." Defense counsel argued that since the jury had heard the tape recording, the appellant should be allowed to read a portion of the case of Cooley v. State,439 So.2d 193 (Ala.Cr.App. 1983), so that the jury could hear the appellant's voice. The trial court denied defense counsel's motion without stating a specific reason.
There is authority for the proposition that, in a criminal prosecution, a defendant has a right to demonstrate a physical characteristic to the jury without waiving the Fifth Amendment privilege against self-incrimination and without subjecting himself to cross-examination. State v. Tillett, 351 So.2d 1153,1157 (La. 1977) ("[I]f the state can compel a criminal defendant to demonstrate his physical characteristics before the jury without infringing on his fifth amendment rights [which it can], a defendant's offer of such a demonstration does not constitute a waiver of that same right"); State v.Martin, 519 So.2d 87, 91 *Page 1276 
(La. 1988) ("The trial judge erred in holding that defendant would be subject to 'limited' cross-examination if he chose to display his tattoos to the jury"); State v. Washington,550 So.2d 283, 286 (La.App. 1989) ("[T]he trial court erred in ruling that the defendant's presentation of a voice exemplar would waive his privilege against self-incrimination"); Peoplev. Shields, 81 A.D.2d 870, 438 N.Y.S.2d 885, 886 (1981) (accused should have been able to exhibit to the jury a scar that had not been mentioned by the complaining witness). The rule applies where the defendant has established an evidentiary foundation for the display. United States v. Bay,748 F.2d 1344, 1345-47 (9th Cir.), as modified on rehearing,762 F.2d 1314, 1315-17 (9th Cir. 1985) ("If in fact the tattoos were on Bay's hands at the time of the robberies, it should be easy for him to lay that foundation by the testimony of the members of his family or of acquaintances"); People v. Jones, 132 Misc.2d 207,503 N.Y.S.2d 936, 939 (1986).
The refusal to allow a defendant to give a voice exemplar to demonstrate his heavy accent without subjecting himself to cross-examination was held not to constitute an abuse of discretion in United States v. Esdaille, 769 F.2d 104, 106-08
(2d Cir.), cert. denied, 474 U.S. 923, 106 S.Ct. 258,88 L.Ed.2d 264 (1985). In that case, the refusal was not error because the trial court found that the exemplar would have little probative value because it was inherently suspect in that an accent could easily be deepened or feigned, and that its probative value was outweighed by prejudice to the government in light of both the ease with which the defendant could deliberately alter his accent and the inability of the government to test the reliability of the accented reading. As the court observed in Esdaille:
 "[T]he matter of whether an act is testimonial or not bears on whether a person may be compelled, consistent with his Fifth Amendment right to avoid self-incrimination, to perform that act; but the fact that exhibition of a physical characteristic is not testimonial in nature, and hence may be compelled at some stage, does not require its admissibility into evidence."
769 F.2d at 107.
In this case, the trial court did not condition the appellant's demonstration on subjecting himself to cross-examination. Although the prosecutor did, in arguing his objection, make one reference to not "hav[ing] a chance to cross-examine and ask questions," the thrust of his argument was that "the tape had nothing on it but static. . . . There is no voice on the tape that you can compare a voice with." During the discussion of this matter, the trial court also emphasized the fact that the "tape was basically inaudible:"
 "There was nothing on that tape. The Court couldn't hear anything on the tape as far as any identification of anybody. The tape was basically inaudible."
In view of this observation by the trial court, it appears that the appellant's proffered voice exemplar would have had little probative value.
Furthermore, in this case, defense counsel requested that the appellant be permitted to read a portion of a specific judicial decision. There was never any request that the appellant be permitted to read "neutral" material.
There is nothing in the record to indicate the portion of theCooley opinion defense counsel wanted the appellant to read.Cooley was not "neutral" material as it involved two issues that were or could have been applicable to appellant's case: 1) pretrial identification procedures, and 2) the holding that requiring a defendant to utter the words used by the robber did not violate his privilege against self-incrimination because the statement uttered by the defendant at the suppression hearing was not "testimonial" in nature and was not made before the jury.
The accepted rule in Alabama is that the reading of law books to a jury, even by attorneys in oral argument, is a matter within the sound discretion of the trial court. See Davis v.State, 213 Ala. 541, 543, 105 So. 677, 678 (1925); Van Antwerpv. State, 358 So.2d 782, 787-88 (Ala.Cr.App.), cert. denied,358 So.2d 791 *Page 1277 
(Ala. 1978), overruled on other grounds, Ex parte Marek,556 So.2d 375 (Ala. 1989). "The court has a general discretion in such matters, to be revised only when abused." Davis,213 Ala. at 543, 105 So. at 678. Merely because the appellant had a right to demonstrate the quality of his voice for the jury does not mean that the appellant could say anything he wanted in that demonstration. We hold that the trial court acted within its discretion and did not commit error in refusing to allow the appellant to read a portion of a judicial decision to the jury in order to demonstrate his voice.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] We note that there is nothing in the record to indicate that the informant had previously said anything in regard to this matter.
[2] It is clear that the informant in this case was not a "mere tipster." Compare Scarbrough v. State, 528 So.2d 890, 891
(Ala.Cr.App. 1988) (informant "was not a witness to the transaction with which the accused [was] charged, nor did he participate as a decoy or otherwise"). From the State's evidence presented in the form of Agent Richardson's testimony, it would have appeared to the trial court at the time the disclosure was requested, that the informant was a "passive observer" who, while he may have introduced Richardson to the appellant, played no part in the actual exchange of drugs and money. See Qualls v. State, 555 So.2d 1158, 1160 (Ala.Cr.App. 1989).
[3] Defense counsel vigorously cross-examined Agent Richardson with regard to his identification of the appellant. Later, through defense witnesses, it was intimated that the appellant had a cousin by the name of Alfred Berry who was engaged in illicit drug sales in Dothan, the inference being that it was this person who had sold the cocaine to Richardson.
[4] As the informant's testimony at the in camera hearing is contained in the record, we are able to assess the usefulness of that testimony to the appellant. Compare Commonwealth v.Ennis, 1 Mass. App. 499, 301 N.E.2d 589, 592 (1973) (where there was no in camera hearing and the informant was the only witness to drug sale to police officer in which defendant denied participating, reviewing court could not "tell what the effect of [the disclosure of the informant's identity] might have been").