JAMES H. FAULKNER, Retired Justice.
Vincent Edward Hawkins was indicted for the offense of shooting a firearm into an occupied vehicle in violation of § 13A-11-61, Code of Alabama 1975. A jury trial resulted in a mistrial. Upon retrial, the jury found Hawkins guilty as charged in the indictment, and he was sentenced to a term of 20 years’ imprisonment.
The state’s witnesses testified that on July 2, 1989, Jamie Cooper drove his father’s automobile to Dothan accompanied by three of his cousins — Willie Newsome, Bobby Ray Kinsey, and Willie Sewell. The four went to the Centipede Club, which is located in Houston County, and they left the club between 2:30 and 3:00 a.m. allegedly without consuming any alcoholic beverages.
According to the state’s witnesses, when the four men got into the car, as they were leaving the club, Mazoo Martin approached and began talking to them. He allegedly asked Kinsey “Why do you keep staring at me?” and Kinsey replied that he had not been staring at Martin. Cooper left the club’s parking lot. While the car was stopped at a traffic light, Martin allegedly stepped in front of the car and made a gesture “like he was cutting someone’s throat.” Kinsey then told Cooper to park the car so that he could straighten out any problem with Martin.
After Cooper parked the car, Kinsey got out, and he and Martin got into a heated argument, in front of a group of about 15 person, that lasted for approximately two minutes. Someone from the group then allegedly ran across the street and returned with Vincent Edward Hawkins, who was carrying a .44 caliber magnum pistol.
According to the state’s witnesses, as he approached the group, Hawkins allegedly asked “Who is messing with Mazoo?” Cooper and his cousins then got into the car, and as Cooper was trying to find the keys to start the car, Hawkins allegedly began firing the pistol. Cooper started the car, and as he drove off he heard four shots. Cooper stopped the car after traveling a short distance because Hawkins had shot one of his tires. Cooper testified that neither he nor his cousins had a gun or knife in their possession, and that none of them did anything to Martin other than Kinsey’s arguing with Martin.
Martin testified on behalf of Hawkins to the effect that he was standing outside the Centipede Club at 2:00 a.m. on July 3,1989, and that he saw Kinsey sitting in a car with Cooper, Newsome, and Sewell. According to Martin, Kinsey was staring at Martin, and Martin approached the car and asked why Kinsey was looking at him like he was crazy. Martin testified that Kinsey stated that he would “kick Martin’s ass” and that he did not like Martin. He further testified that he then walked over to a group of friends, and the car with the four *200 men in it, turned right and headed towards another nightclub. Martin then crossed the street heading home because he thought the car was gone. Martin allegedly saw Cooper, Kinsey, Sewell, and New-some standing in the street arguing, calling Martin’s name and threatening him.
According to Martin, while they were in the street, the four men were talking about what a man known as Willie Dixon or Willie Johns, who they referred to as “Rabbit,” told them and what Rabbit was supposed to do for them. According to Martin, Rabbit did not like Martin.
Martin further testified that Kinsey approached him and began arguing with him. According to Martin, during the argument Newsome held a .22 caliber revolver in his hand and walked around them. There were several people watching the argument, and someone broke up the argument before a fight actually erupted.
Martin testified that as he began to walk away from Kinsey, he heard two shots fired in rapid succession. Martin ran for cover and saw Hawkins. Martin did not see a gun in Hawkin’s hand, but he subsequently heard three or four shots fired in rapid succession.
According to Martin, he had no weapon in his possession on that day, he never hit Cooper’s car or anyone in the car, and that he did not make a gesture like he was cutting someone’s throat.
Hawkins then testified in his own behalf that in the early morning hours of July 3, 1989, he was standing outside the Centipede Club when he noticed Martin in an argument with four men. According to Hawkins, he hollered for Martin to get away from those men. Hawkins testified that he then began to cross the street to meet Martin, who was trying to leave the four men when two shots were fired in rapid succession. According to Hawkins, the shots were coming from the direction of Cooper’s car, and he and Martin ran across the street away from Cooper’s car and the gunfire. Hawkins then jumped into his own car to escape the gunfire. Hawkins saw Cooper’s car begin to leave with the four men inside, so Hawkins got out of his car and grabbed his gun from his own car and shot three times at the tires on Cooper’s car to disable the car until the police could arrive. Because Cooper’s car continued to move, Hawkins then got into his car and followed Cooper’s car to obtain the license number. The police then arrived. Hawkins testified that the chamber of his gun accommodated only four bullets and that only three shells were spent.
Hawkins contends that the trial court committed reversible error in admitting, over his objections, evidence of subsequent criminal acts allegedly committed by Hawkins and Martin. We agree.
At the beginning of the trial, Hawkins made a motion in limine to prohibit testimony regarding the shootings of Willie Dixon, also known as Rabbit, and Gary Pender, which shootings allegedly occurred on October 8, 1989, in front of the Front Row Lounge in Dothan. Hawkins based his motion upon the grounds of relevancy, materiality, remoteness, and undue prejudice. The state responded that because Hawkins claimed self-defense, the state planned to ask Hawkins whether he shot Pender and Rabbit on October 8,1989, and that if Hawkins denied those shootings, the state would call Pender as a rebuttal witness. According to the state, Pender’s testimony would be offered for the purposes of establishing intent, common plan, scheme, and design and for rebutting Hawkins’ claim of self-defense. The trial judge noted that because he had presided over Hawkin’s trial that had concluded in a mistrial and knew the defense of self-defense would be raised, he would deny Hawkins motion in limine.
During cross-examination of Mazoo Martin, which occurred before Hawkins took the stand, the prosecutor asked Martin whether Rabbit, a sheriff’s informant, has been shot and killed outside of the Centipede Club and whether Martin had assaulted Pender by shooting him in the back with a rifle. Defense objections to these questions were overruled.
The prosecutor then asked Martin the following question:
*201 “Q: You know that your friend, Vince [Hawkins], shot Gary Pender, also, don’t you?
“A: That is what people told me, but I don’t know.
“MR. BRANTLEY [Defense Counsel]: Judge—
“MR. BINFORD: What people told you—
“MR. BRANTLEY: Judge, I move for a mistrial.
“THE COURT: Motion denied. You may continue.
“MR. BRANTLEY: Also, I will move for a mistrial on the grounds that there has been no probative value to that. We have not put on a defense of self-defense yet, Judge. And, to introduce this evidence before the jury before we put on any defense of self-defense, is for one reason, and that is to inflame the jury.
“THE COURT: Let the record show that the direct examination of this witness introduced matters that could be construed as raising the defense that the defendant acted in defense of a third person. And, this is proper cross-examination. Motion for mistrial is denied. You may proceed.”
Following the conclusion of Martin’s testimony, defense counsel asked Hawkins on direct examination whether he had shot Rabbit and Hawkins responded “No.” On cross-examination, the prosecutor asked Hawkins whether he had shot Pender, and Rabbit, and Hawkins denied shooting any of these persons.
On rebuttal, the state was allowed to bring in Gary Pender to testify that on October 8, 1989, Hawkins shot him and Rabbit outside a Dothan nightclub and that on the Wednesday prior to October 8, 1989, Mazoo Martin had shot Pender in Florida.
The rule regarding admissibility of prior or subsequent misconduct by a criminal defendant has been well stated in C. Gamble, McElroy’s Alabama Evidence § 69.-01(1) (4th ed. 1991):
“On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime was committed before or after the one for which the defendant is presently being tried.
“This exclusionary rule is simply an application of the character rule which forbids the state to prove the accused’s bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.”
The exclusionary rule protects the defendant’s right to a fair trial by seeking “ ‘to prevent conviction based on a jury belief that the accused is a person of bad character. The jury’s determination of guilt or innocence should be based on evidence relevant to the crime charged.’ ” Goodman v. State, 401 So.2d 208, 212 (Ala.Cr.App.), cert. denied, 401 So.2d 213 (Ala.1981) (quoting United States v. Turquitt, 557 F.2d 464, 468 (5th Cir.1977)).
There are, however, several well-known exceptions to the rule, and under certain circumstances evidence of prior or subsequent misconduct may be admitted. See generally McElroy’s Alabama Evidence § 69.01.
The state contends that the shootings of Rabbit and Pender, which occurred three months after the present offense, were admissible under either the intent, common scheme, or rebuttal of defenses exceptions. We disagree.
Under § 13A-11-61, Code of Alabama 1975, the offense of shooting a firearm into an occupied vehicle does not re *202 quire proof of specific intent. Thus, the alleged subsequent shootings may not be admitted under the intent exception to the exclusionary rule.
Under the common scheme exception to the rule, we hold that testimony that Hawkins may have shot Rabbit or Pender outside another Dothan nightclub three months after the present offense is not evidence of a pattern or pre-existing design into which the present charge of shooting a firearm into an occupied vehicle fits. In the first place, the victims of the subsequent shootings, Rabbit and Pender, are different from the four men occupying the car in the instant case. The record, moreover, does not reflect that Rabbit and Pender were present outside the Centipede Club on July 3, 1989, when the instant shooting occurred, and they cannot be connected with the instant shooting. Third, the subsequent shootings allegedly occurred outside a different Dothan club from the present offense and did not occur in an occupied vehicle. Finally, the alleged subsequent shootings occurred three months after the present offense and cannot be connected as part of a single plan, design, scheme, or system.
We hold that evidence of the subsequent shootings during Martin’s cross-examination was not proper rebuttal of Hawkins claim of defense of others or self-defense. In the first place, the prosecutor introduced the prejudicial evidence that Hawkins may have shot Pender before Hawkins testified and asserted his defenses. When the prosecutor asked Martin whether Hawkins had shot Pender no plea of self-defense or of defense of others had been raised. Martin himself testified that he did not see Hawkins with a gun and that he did not see who fired the shots at the vehicle on July 3, 1989. "
Because, moreover, the circumstantial evidence of the subsequent shootings does not fall within any of the other exceptions such as identity, motive, physical capacity, or knowledge, the trial court erred in denying Hawkin’ s motion in limine and in admitting the testimony of the subsequent shootings into evidence.
“The state has no absolute right to use evidence of prior acts to prove the elements of an offense or to buttress inferences created by other evidence. Evidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant. It interjects a collateral issue into the case which may divert the minds of the jury from the main issue. Kilpatrick v. State, 51 Ala.App. 352, 285 So.2d 516 (1973), cert. denied, 291 Ala. 628, 285 So.2d 525 (1973). Therefore, the admission of such evidence constitutes reversible error.”
Ex parte Cofer, 440 So.2d 1121, 1124 (Ala.1983).
The foregoing opinion was prepared by James H. Faulkner, a Retired Justice, Supreme Court of Alabama, serving as a judge of this court, and his opinion is adopted as that of this court.
The judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.