The appellant, Fredrico Robinson, was indicted on two counts of capital murder. Count I charged the appellant with the capital offense of murder committed during the course of a robbery. §13A-5-40(a)(2), Ala. Code 1975. Count II charged the appellant with the capital offense of murder committed by use of a deadly weapon while the victim was in a vehicle. § 13A-5-40(a)(17), Ala. Code 1975. The jury acquitted the appellant as to Count I and found him guilty of felony murder, a lesser included, offense of the capital murder charge in Count II. See §13A-6-2(a)(3), Ala. Code 1975. The appellant was sentenced to life in prison.
The evidence tended to show that on the evening of December 29, 1993, Tony Williams went to the home of his friend, Misty Dawn Loggins, in Gadsden. Later, Williams and Loggins left the house in Loggins's automobile, and drove to East Gadsden to purchase drugs. Loggins was driving and Williams was in the passenger seat. Williams testified that while they were driving on East Broad Street, they passed two black males who were walking. He stated that both men made a hand motion, which, to him, indicated that they had drugs. Loggins turned the car around and drove up to the two men. The men came over to the passenger-side window. Williams stated that he spoke with one of the men, whom he described as a large, heavy black male with a dark complexion, who was the shorter of the two men and who was wearing blue jeans and a hooded sweat-shirt. Williams later identified this man as the appellant; the other man was identified as Derrick Woods. Williams asked the appellant if he was "holding." The appellant replied, "Yes, give me a second." Williams stated that the appellant also asked Williams for a ride, which Williams declined to give. The appellant then reached inside his pants, pulled out a gun, put it to William's neck and stated, "This is a robbery. Give me all your money and your jewelry." (R. 688.) Williams testified that as he began to comply, he told Loggins that they were being robbed. Loggins began to drive away. According to Williams, the other man standing by the appellant stated, "Shoot the bitch driving the car." (R. 689.) Williams testified that when he "glanced" back to see if the men were running after them, he saw the appellant, who was holding a gun, point it at the car. Williams ducked and heard two shots. The car began to go off the side of the road. Williams looked over at Loggins, who was bleeding, and engaged the emergency brake. He got out of the car, and as he was placing Loggins in the passenger seat to take her to a hospital, a police officer arrived. The officer requested assistance and an ambulance. Loggins was transported to the hospital and died several days later from a gunshot wound to her head.
Williams was taken to the Gadsden Police Department for questioning. While there, he described both men, and the police made a composite sketch. The following day, the police received information from a confidential informant identifying the appellant and Derrick Woods as the two men involved in the attempted robbery and shooting. Based on this information, the police showed Williams a photographic lineup, but he was unable to identify anyone as the men he had seen. He was shown a second photographic lineup, and, this time, he identified the appellant as the heavyset man who had held the gun on him before the shooting and whom he had seen pointing his gun at the car just before he heard the gunshots.
On January 3, 1994, Derrick Woods was taken into custody as a suspect. Approximately two months later, the appellant was located in Donora, Pennsylvania. He was arrested, extradited to Gadsden, and charged with two counts of capital murder.
At trial, the appellant testified on his own behalf. While admitting that he had been present during the shooting, he offered a different version of the events than that given by Williams. The appellant testified that Woods was the person who had shot the driver of the vehicle. He maintained that he and Woods were walking along East Broad Street when the vehicle drove up beside them. He testified that, contrary to Williams's testimony, Woods spoke with *Page 653 
Williams and that the appellant began to walk away. Shortly thereafter, the appellant said, the car began to leave, spraying gravel. He testified that he turned around and heard Woods say, "they got him," meaning that they had taken his cocaine. He testified that Woods pulled his gun and started shooting. The appellant testified that he did not know until later that night or early the next morning that someone in the car had been shot. The appellant testified that he went to Pennsylvania two days later to see his son, who was ill, and because he was afraid he would be prosecuted for the shooting.
Although we have determined that we must remand this cause to the trial court with regard to an issue raised by the appellant, we will, in the interest of judicial economy, address all issues raised by the appellant, reserving for last the issue that requires the remand.
 I
The appellant first contends that the trial court erred in refusing to grant him youthful offender status. Specifically, he contends that he was improperly denied youthful offender status solely on the basis of the nature of the criminal charge against him.
In determining whether to treat a defendant as a youthful offender, the trial court has nearly a absolute discretion. Reesev. State, 677 So.2d 1239 (Ala.Cr.App. 1995). There is no set method for considering a motion requesting such treatment. Id. However, the Youthful Offender Act, § 15-19-1, et seq., Ala. Code 1975, requires that the court conduct a factual investigation into the defendant's background. Generally, the trial court considers the nature of the crime charged, any prior convictions, the defendant's age, and any, other matters the court deems relevant. Reese, 677 So.2d 1239. Moreover, the trial court need not articulate on the record its reasons for denying youthful offender status. Id.
The appellant cites Ex parte Farrell, 591 So.2d 444 (Ala. 1991), which holds that a criminal charge, in and of itself, cannot be the sole basis for denying a petition for youthful offender status. However, the record contains a transcript of the hearing on the appellant's application, and it is clear that the trial court did not base its decision solely on the nature of the criminal charge, but based its decision on numerous other factors in addition to the nature of the crime charged. There is nothing in the record to support the appellant's contention that he was denied youthful offender status solely because of the nature of the crime charged.
 II
The appellant also contends that the evidence was insufficient to support his conviction. The jury acquitted the appellant of capital murder committed during the course of a robbery under Count I and found him guilty of felony murder, a lesser included offense of the capital murder charge under Count II. Thus, we will address only that portion of the appellant's insufficiency of the evidence argument that pertains to felony murder.
 "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit it to the jury, and in such a case, this court will not disturb the trial court's decision.' Ward v. State, 557 So.2d 848, 850
(Ala.Cr.App. 1990). `In determining the sufficiency of the evidence, this Court must accept as true the evidence introduced by the State, must make all legitimate inferences from that evidence and must consider such evidence in the light most favorable to the State.' Daniel v. State, 623 So.2d 438, 441
(Ala.Cr.App. 1993)."
Turner v. State, 674 So.2d 1371, 1376 (Ala.Cr.App. 1995).
Felony murder is committed when a person commits any felony "clearly dangerous to human life and, in the course of furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or anotherparticipant if there be any, causes the death of any person." § 13A-6-2(a)(3), Ala. Code 1975. (Emphasis added.) "`In the typical felony-murder, there is no malice in "fact," express or implied; the malice is an unintended homicide.'" Johnson v.State, 620 So.2d 679, *Page 654 
701 (Ala.Cr.App. 1992), rev'd on other grounds, 620 So.2d 709
(Ala. 1993), on remand, 620 So.2d 714 (Ala.Cr.App. 1993), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993) (quoting Ex parte Bates, 461 So.2d 5, 7 (Ala. 1984)) (emphasis in Bates).
Here, the underlying felony is discharging a firearm into an occupied vehicle. The statute prohibiting discharging a firearm into an occupied vehicle states: "No other person shall shoot or discharge a firearm, explosive, or other weapon which discharges a dangerous projectile into any occupied . . . automobile . . . in this state." § 13A-11-61(a), Ala. Code 1975. Discharging a firearm into an occupied vehicle is a Class B felony. §13A-11-61(b), Ala. Code 1975 Firing gunshots into an occupied vehicle is clearly dangerous to human life. The undisputed evidence in this case is that gunshots were fired into the vehicle occupied by Misty Loggins and Tony Williams and that Loggins was killed as a result.
The appellant contends that the evidence that he shot Loggins is circumstantial, and that the evidence reflects that it was Derrick Woods, not he, who shot Loggins.
 "`A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense . . . [h]e aids or abets such other person in committing the offense . . .' 13A-2-23(2), Code of Alabama 1975. `"`Aid and abet "comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary."'" Gwen v. State, 456 So.2d 845, 851 (Ala.Cr.App. 1984), quoting Jones v. State, 174 Ala. 53, 57, 57 So. 31
(1911). See also Watkins v. State, 495 So.2d 92
(Ala.Cr.App. 1986).' Jones v. State, 623 So.2d 389, 391 (Ala.Cr.App. 1993)."
Turner v. State, 674 So.2d 1371, 1375-76 (Ala.Cr.App. 1995) (emphasis in original).
"The offense of shooting a firearm into an occupied vehicle does; not require proof of specific intent." Hawkins v. State,594 So.2d 198, 201-02 (Ala.Cr.App 1991) (citing § 13A-11-61, Ala. Code 1975). If the jury did not believe the appellant's version of the incident, then the jury had to decide whether the appellant acted as a principal or as an accomplice in the commission of the felony murder.
As previously noted, it is undisputed that gunshots were fired into the vehicle occupied by Loggins and Williams, killing Loggins. Furthermore, it is undisputed that the appellant was at the scene of the killing. The only issue that was disputed was whether the appellant or Woods fired the gun into the vehicle.
Williams positively identified the appellant, in a photographic lineup and at trial, as the person with whom he spoke that night and as the person who placed a gun to his neck and said "This is a robbery." Furthermore, Williams testified at trial that as Loggins began to drive away, he "glanced" back and saw the appellant pointing a gun at the car. As Williams ducked, two shots were fired; one of those shots killed Loggins. The appellant denied all involvement in the shooting and placed the entire blame on Woods.
Depending on which witnesses the jury believed, there was testimony presented from which the jury could have found the appellant guilty of felony murder, at least on the theory of complicity. "The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury. . . . A defendant's guilt may be established by circumstantial evidence as well as by direct evidence." Smith v. State, 698 So.2d 189, 214 (Ala.Cr.App. 1996), aff'd. 698 So.2d 219 (Ala. 1997). Considering the evidence in the light most favorable to the state, there was sufficient evidence from which the jury could decide whether the appellant committed or assisted in the killing.
 III
The appellant also contends that the trial court erred in refusing to charge the jury on manslaughter as a lesser included offense. The appellant was not entitled to an instruction on manslaughter because there *Page 655 
was no evidence presented that his conduct was reckless. In fact, the appellant's defense was misidentification. He denied shooting Loggins and contended instead that Woods shot her. We can find no basis for a manslaughter charge when the appellant denies any culpability whatsoever. The state's evidence did not support such a charge. Thus, the trial court properly denied the requested jury charge.
 IV
The appellant also contends that the trial court erred in refusing to allow him to question Derrick Woods regarding pending indictments against him.
Initially, we note that the appellant was aware that Woods would invoke the Fifth Amendment if called to testify. The trial court instructed the appellant that if he chose to call Woods to testify, he would not be permitted to question Woods regarding any pending indictments. The appellant called Woods as a defense witness, and on each question asked by defense counsel, Woods invoked his Fifth Amendment right to remain silent.
The state cites Sanford v. State, 652 So.2d 776 (Ala.Cr.App. 1994), as instructive in this case. In Sanford, the appellant called his alleged accomplice as a defense witness. When questioned, the accomplice invoked his Fifth Amendment right to remain silent. When defense counsel attempted to question the accomplice regarding a plea bargain offer with the state, to the state objected and the trial court sustained the objection. This court first noted that it was improper for defense counsel, knowing that the alleged accomplice planned to invoke the Fifth Amendment, to call the accomplice as a witness and question him in an apparent attempt to have the jury draw infer his guilt from his assertion of his right. Sanford, 652 So.2d at 777. Further more, this court held that, although the accused has the right to inquire into the terms of any plea agreement the state has entered into with an accomplice who testifies against the accused, this rule does not apply when the accomplice does not testify against the accused. Sanford, 652 So.2d at 777.
In this case, knowing he would not be allowed to pose any questions regarding pending indictments, defense counsel called Woods to testify. As expected, Woods invoked his Fifth Amendment right to remain silent. We first note that it was improper for defense counsel to call Woods as a witness, knowing that Woods planned to invoke the Fifth Amendment. This was an apparent attempt to have the jury infer Woods's guilt from his assertion of rights. Sanford, 652 So.2d at 777. See also Garner v. State,606 So.2d 177 (Ala.Cr.App. 1992). Furthermore, because Woods did not testify against the appellant, the defense had no right to question Woods regarding any pending indictments. Sanford, supra. Clearly, defense counsel was not entitled to call Woods as a witness merely to improperly impeach him with pending robbery indictments against him for the purpose of creating an inference that it was more likely that Woods was the person who committed the crime, rather than the appellant. We find no error in the trial court's ruling.
 V
Finally, the appellant contends that the trial court erred in refusing to direct the state to provide him with the name of a confidential informant who provided the police with information that identified the appellant and Woods as the persons involved in the shooting.
The appellant filed a motion requesting that the name of the confidential informant be revealed. He contended that this confidential informant was an eyewitness who allegedly saw two persons standing near the victim's vehicle and saw them running away from the vehicle after the shooting. The prosecution did not dispute this contention, but refused to reveal the confidential informant's identity without an order from the trial court. The appellant contended that he was entitled to know the identity of this witness to determine whether the witness could provide exculpatory evidence. Based on discussions included in the record, it appears that the trial court held an in camera hearing. The appellant requested that the *Page 656 
trial court include a sealed transcript of the hearing in the record for appellate review, but his request was denied. The trial court entered an order summarily denying the appellant's motion to reveal the identity of the confidential informant. (R. 189.)
 "It is well recognized that the prosecution has the privilege to withhold the identification or production of persons who furnish information to law enforcement officers. See Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639
(1957). See generally United States v. Herrero, 893 F.2d 1512, 1525 (7th Cir.), cert. denied, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990). However, this privilege is not absolute. `Where the disclosure of an informer's identification, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.' Roviaro, 353 U.S. at 60-61, 77 S.Ct. at 628. In Roviaro, the United States Supreme Court refused to establish a `fixed rule' for disclosure of informant identity, noting that
 "`[t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses the possible significance of the informer's testimony, and other relevant factors.'
"353 U.S. at 62, 77 S.Ct. at 628-29.
 "While the prosecution's privilege to withhold an informant's identity may be defeated, `the burden is on the defendant to demonstrate the need for the disclosure.' United States v. Fixen, 780 F.2d 1434, 1439 (9th Cir. 1986), quoted in Lightfoot v. State, 531 So.2d 57, 59 (Ala.Cr.App. 1988)."
Berry v. State, 581 So.2d 1269, 1273 (Ala.Cr.App. 1991) (emphasis in original).
An in camera hearing is an appropriate way to perform theRoviaro balancing test. Berry, supra; Franks v. State,651 So.2d 1114 (Ala.Cr.App. 1994). In Berry, as in this case, the defense was misidentification. The court stated that "[b]ecause the informant was a witness to the transaction, he was clearly in a position to provide testimony which was relevant to the issue of identity." 581 So.2d at 1273. (Emphasis in original.) In Berry, the trial court held an in camera hearing and had the testimony transcribed and sealed, so that a record was available for appellate review. Thus, the Berry court was able to review the informant's in camera testimony with regard to the issue of identity and agreed with the trial court that it would not be helpful to the appellant, and that it was, in fact, damaging to the appellant.
In this case, there was sufficient evidence to warrant an in camera examination by the trial court for the purpose of determining whether the confidential informant had exculpatory information. However, the trial court denied the appellant's request to include in the record a sealed transcript of the in camera hearing. Furthermore, the trial court failed to make any specific findings in its order. Therefore, there is nothing for this court to review to determine whether the trial court abused its discretion in denying the appellant's request to reveal the identity of the confidential informant.
We, therefore, remand this cause to the trial court with instructions that the trial court provide this court with a transcript from the in camera hearing, if in fact such hearing took place. If, however, a transcript cannot be provided, the trial court is instructed to hold another in camera examination to determine if the confidential informant had exculpatory information, and then to provide this court with a transcript of that hearing. The trial court is further instructed to file with this court the transcript of the hearing, under seal, and a written return within 42 days of the date of this opinion, informing this court of its findings. These findings should include specific references to any information that the court considers to be exculpatory. *Page 657 
REMANDED WITH INSTRUCTIONS.*
All Judges concur.
* Note from the reporter of decisions: On May 8, 1998, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On August 14, 1998. that Court denied rehearing, without opinion. On February 26, 1999, the Supreme Court denied certiorari review, without opinion (1972091).