Appellant's conviction of robbery, for which the jury fixed the minimum punishment of imprisonment for ten years, is amply supported by direct evidence. No contention to the contrary is made on this appeal.
Appellant insists that the jury should have been charged on the lesser included offense of larceny. We find it unnecessary to determine whether defendant properly raised the question on the trial. As to that there may be considerable doubt, but neither side has referred to it on appeal.
According to the testimony of the alleged victim of the robbery, the cashier of the Zippy Mart in Tuscaloosa, defendant caused her to hand him the money in the cash register, which amounted to approximately forty dollars. She said he asked for the money three times, that she did not take him seriously the first two times and laughed at him then and said, "You're kidding." She said that "Then he got mad and said, `No, I'm not kidding, give me the money, now.'" He had a "case cutter" in his hand, "a razor blade cutter you use to cut cardboard boxes and things with," an instrument that works "like a pocket knife works" that "looks kind of like one of those knives they use to shave with except its real thin." As correctly pointed out by appellant, he told her several times not to be afraid, that he wasn't going to hurt her and asked her why she was shaking so much. He never touched her and never hurt her physically. In answer to the question *Page 96 
on cross-examination, "Did he ever threaten you?", she replied, "No."
In a trial on an indictment for robbery, if the evidence, according to any reasonable theory, presents a controversy whether the particular conduct constitutes robbery on the one hand or larceny on the other, defendant is entitled to have the court charge on the lesser included offense of larceny. Kelly v.State, 235 Ala. 5, 176 So. 807; Stovall v. State, 34 Ala. App. 610, 42 So.2d 636; Golston v. State, 57 Ala. App. 623,330 So.2d 446. Notwithstanding the parts of the testimony of the victim of the robbery relied upon by appellant for his contention that there was a "reasonable theory" for a finding of larceny, as distinguished from robbery, we are persuaded that under no reasonable theory could there have been such a finding. Of the cases cited by appellant in support of his insistence, Twitty v.State, 50 Ala. App. 246, 278 So.2d 247, is most nearly in point. In Twitty, a conviction of grand larceny was upheld, but the case is clearly distinguishable from the instant case. The evidence inTwitty showed that defendant demanded twenty dollars from the victim, said he was "going to get twenty dollars off of" him, grabbed the victim's hand, opened his pocket book and "jerked" five dollars out. There was sufficient evidence in Twitty to support a finding of robbery, but the fact that defendant snatched or "jerked" the money from the pocket book of the victim constituted some evidence of larceny from the person. There was no such action involved in the conduct of defendant toward the victim in the case now before us. In this case, the victim went into the cash drawer and handed the money to defendant. The transfer of the money from her possession to the possession of defendant consisted of action by her, not by him, although his action caused her to surrender possession of the money to him. Assuming the truth of the victim's testimony as to the circumstances and that there was no collusion between her and defendant, as to which there is no contention to the contrary, the only reasonable conclusion from the testimony is that defendant was either guilty of robbery or guilty of no crime whatever, which he claimed in that he testified he was not present at the time and place of the alleged crime.
Tuscaloosa City Detective Earl Harless was allowed to testify, over the objection of defendant, that defendant confessed the robbery, some three or four hours after the robbery, after he had been arrested and while he was in custody. Admittedly he had been given the Miranda warnings and fully advised of his rights in every respect, including his right to counsel without expense to him. The gist of defendant's objection to the admission of the confession was that defendant at the time thereof was too intoxicated to understand his rights and warnings given him and that under all the circumstances his confession was inadmissible in evidence. The parties are not in disagreement as to the controlling principle of law. It is well established that "intoxication short of mania or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words will not render a confession inadmissible."Anderson v. State, 45 Ala. App. 653, 235 So.2d 902; Winn v.State, 44 Ala. App. 271, 207 So.2d 138; Ray v. State, 39 Ala. App. 257, 97 So.2d 594. Unquestionably, defendant was intoxicated at the time of the confession. There was much evidence, including defendant's own testimony, that pointed to the high state of intoxication. According to his testimony, he had been drinking intoxicating liquor practically all the morning and afternoon before the night of the alleged robbery and had continued drinking for approximately two hours after the time of the alleged robbery. He said that he himself was robbed, that he was knocked in the head in the process of the robbery, a short time after the time of the robbery for which he was tried. Notwithstanding the strong evidence as to a high state of intoxication, including testimony of one of the law enforcement officers that he was "under the influence of alcohol or some stupifying drug," there was substantial evidence that he was not so intoxicated as to render his confession inadmissible, *Page 97 
in accordance with the agreed upon, controlling principle of evidence. In the process of the court's determination of the question of the admissibility in evidence of the confession out of the presence of the jury and in response to questions propounded by defendant's attorney, a witness for the State said that defendant did not have any difficulty in walking, that he did not stagger, that defendant was intoxicated to the extent that the witness as an officer would have arrested him for driving while intoxicated but, "I don't know if I would have arrested him for public drunkenness." One of the law enforcement officers testified that after "his rights" had been read to defendant, defendant stated that he understood his rights, that he "talked pretty plain all the time he was talking." Upon being cross-examined, one of the State's witnesses stated, "Well, he knew what we was talking about and what we was doing." A review of the entire testimony of the witnesses as to what was said by defendant the entire time he was in custody does not reveal any incoherence or unintelligibility of statements by him. After careful consideration by the trial court, it determined that defendant was not so intoxicated as to render his confession inadmissible. We find no error in the trial court's ruling.
After the victim had testified to the robbery and had identified the defendant in court as the robber, she was asked by the State whether "anytime that night did you again see the defendant." At that point, counsel for defendant stated "We would like to enter an objection and ask to take the witness on voir dire outside the presence of the jury." During the interrogation of the witness by defendant's counsel out of the presence of the jury, it was shown that the two law enforcement officers, Tuscaloosa City Detectives Earl Harless and John Cork, who had answered the victim's telephone call reporting the robbery, had brought defendant to the store, that the three got out of the car, and while defendant was standing by the car, one of the detectives asked if she recognized him and she said, "Yes, sir, that is the man." After such interrogation by defendant's counsel, defendant's counsel objected "to any identification based on this one man's show up on the ground it doesn't meet the requirements set forth in the case law of Alabama for a one man show up." The trial court overruled the objection, the witness was allowed to testify that she identified the person at the time as the defendant and as the person who had robbed her. In determining whether such evidence was admissible, both parties seem to deem that the question of the admissibility of the witness' identifying evidence on this one-man showup is to be determined by the circumstances shown by the evidence as a whole in the case and not merely by the testimony of the particular witness on voir dire cross-examination. According to Detective Harless, upon his arrival at the store with Detective Cork, they closed the store to the public and made a prompt inspection of the premises in search of clues, including any identifiable finger prints, which they did not find. They interrogated the victim in detail as to what occurred and obtained a description of the robber and his clothing. About 10:00 P.M., they located defendant about three-quarters of a mile from Zippy Mart, observed that he met the description furnished by the victim of the robbery, with the exception that he had on no shoes at the time,[1] and interviewed defendant. They "picked him up," and he asked why they were picking him up; they said, "Suspicion of robbery," and he said, "Well, I have been robbed myself." They took him promptly to the scene of the robbery and exhibited him to the victim.
Both parties in their briefs rely chiefly on Robinson v. State,55 Ala. App. 658, 318 So.2d 354, in which Judge Harris set forth clearly the controlling principles of law, with authorities cited, and, in applying them to circumstances of the particular case, concluded that the one-man showup identification was admissible in evidence. Appellant urges that the result inRobinson should not obtain in this case, for that in *Page 98 Robinson, defendant "was brought to the store by police officers a few minutes after the robbery" and was there identified by the victim, the operator of a store in Eufaula, incidentally another Zippy Mart store. Appellant emphasizes the fact that in Robinson
the time between the robbery and the identification was no more than approximately forty-five minutes. Our consideration ofRobinson, the supporting authorities cited therein, and other authorities on the subject, convinces us that most, if not all, of the applicable cases have involved periods of time of less than an hour between the crime and the confrontation. Appellant ably argues therefrom that the principle of the cases requires the rejection in evidence of testimony of a one-on-one confrontation identification that occurred two and one-half hours after the robbery. Unquestionably, the words such as "prompt," "immediate identification," "near the time of the alleged criminal act," and other such expressions found in the cases on the subject, emphasize the importance of shortness in the interval of time between the robbery and the confrontation as a factor in favor of the State on the question of the admissibility of the confrontation identification testimony. The standard for determining whether the evidence is admissible is whether the procedure used in obtaining the identification was so impermissibly suggestive as to create a substantial risk of misidentification. Robinson v. State, supra; United States v.Henderson, 5 Cir., 489 F.2d 802, cert. denied 417 U.S. 913,94 S.Ct. 2612, 41 L.Ed.2d 917.
The evidence in this case indicates, if it does not conclusively show, that there was no more likelihood of misidentification at the time of the confrontation than there would have been if the confrontation had been within thirty minutes after the robbery. Of far greater importance than the registered period of time involved are the circumstances from the time of the robbery to the time of the confrontation and the effect that such circumstances might have upon the question whether the confrontation meets the test of admissibility.
The statement of Judge Burger, now Chief Justice of the Supreme Court of the United States, in Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104:
 "There is no prohibition against a viewing of a suspect alone in what is called a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy."
is just as applicable to the circumstances here as in Bates, although time was shorter in Bates. Also applicable is the following excerpt from Bates:
 [T]he police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trial is fresh. . . ."
In the instant case, when defendant was apprehended and the officers were confronted with his claim that he himself had been robbed, that he was not guilty of any robbery, they were faced with a dilemma. They had probable cause for apprehending him and taking him to jail on the basis of the description given to them by the victim, but his statement that he himself had been robbed, his denial of any robbery by himself, and some blood on his face that indicated some violence to him, were calculated to give the officers pause. They would not have been justified in releasing him at that time; they were clearly justified in rechecking at that time with the victim of the robbery. There was nothing improper about their conduct. There was nothing unnecessarily suggestive in their taking him to the victim and asking her if she recognized him. They were performing their duty to all concerned, the public, the victim and the defendant. This cannot be said of any other course that they could have taken at that time, including particularly the suggested course that they should have locked *Page 99 
him up and thereafter, around midnight perhaps, or the next morning, conducted a lineup. The procedure followed by them was neither impermissibly suggestive nor conducive to a likelihood of misidentification.
The evidence of the one-on-one identification was not subject to the objection made by defendant.
Defendant reserved an exception to the court's charge relative to reasonable doubt. By reason of some uncertainty as to exactly what was said by the court, the parties have stipulated that the court said:
 ". . . Now, a reasonable doubt is not just a guess or surmise, it is a doubt for which you must find a reason for, a reason for which you must have abiding conviction as to the truth of the charge . . ."
It is further stipulated by the parties that the exception or objection of defendant was as follows:
 ". . . The defense . . . would also object and except to Your Honor's definition of a reasonable doubt as being a reasonable doubt for which you must find a reason for . . ."
The objection or exception stops short of ". . . a reason for which you must have abiding conviction as to the truth of the charge . . ." It is not for us to disagree with the stipulation as to what the trial court said, but we suggest that there may have been more of a separation in thought between ". . . you must have abiding conviction as to the truth of the charge . . ." than the immediately preceding part of the court's partial explanation of a reasonable doubt, than the stipulation indicates. At any rate, the objection or exception did not embrace the present criticism of the charge. An exception to a portion of the court's oral charge must be taken and reserved to the particular language the exceptor conceives to be erroneous. Allford v. State, 31 Ala. App. 62, 12 So.2d 404, cert. denied, 244 Ala. 148, 12 So.2d 407. Furthermore, in the light of the remainder of the court's oral charge to the jury as to the necessity for the jury to be convinced beyond a reasonable doubt of defendant's guilt, we conclude that defendant was not prejudiced by the portion of the court's charge here urged as erroneous.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.
[1] His shoes were afterwards found where defendant had been between 7:30 and 10:00 P.M.