The appellant, John G. Marshall, was convicted of rape in the first degree, sodomy in the first degree, and robbery in the first degree. He was sentenced as a habitual offender to a term of life imprisonment without the possibility of parole.
The evidence presented at trial tended to show that the appellant entered the Video Gallery video store in Gadsden, Alabama, placed a pistol to the stomach of the 19-year-old victim, and demanded money. The victim complied with the demand and gave the appellant $126 that was in the cash register. The appellant then forced the victim, at gun point, through the back door of the store. Once outside, the appellant told the victim to remove her pants, after which he began to fondle her. He then forced the victim into a wooded area behind the store, where he raped and sodomized her while holding the pistol to her head.
On the night of the attack, an alert citizen, Wanda McCrary, was working at the Food World grocery store located in the same shopping center as the Video Gallery. She walked out to her automobile and noticed a man sitting in the automobile next to hers. When the man noticed her, he immediately started his vehicle and drove away. Ms. McCrary wrote down the tag number of the vehicle. The next day, after hearing of the rape, Ms. McCrary contacted the Gadsden police and gave them the tag number she had written down. The police identified the vehicle as a rental car that had been rented to the appellant on the night of the attack. With this information, the police put together a photographic array consisting of the appellant's driver's license photograph along with the driver's license photographs from five other individuals who shared similar characteristics with the appellant. When this array was shown to the victim, she identified the photograph of the appellant as that of her attacker. The appellant presents four issues on appeal. *Page 16 
 I
The appellant first maintains that the trial court erred in denying his challenges for cause of two jurors who were acquainted with the victim or her family. One veniremember had been employed as a maid by the victim's family and the other stated that she knew the victim's family. After the trial court denied the challenges for cause, the appellant peremptorily challenged both of these jurors, thereby precluding them from sitting on the jury.
General grounds for which a prospective juror may be challenged for cause are set forth in § 12-16-150, Code of Alabama 1975. In dealing with this issue, our supreme court inKnop v. McCain, 561 So.2d 229 (Ala. 1989), stated:
 "Ultimately, the test to be applied is whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence. Tidmore v. City of Birmingham, 356 So.2d 231 (Ala.Cr.App. 1977), cert. denied, 356 So.2d 234 (Ala.), cert. denied, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 132 (1978); see Willingham v. State, 262 Ala. 550, 80 So.2d 280 (1955); Mahan v. State, 508 So.2d 1180 (Ala.Cr.App. 1986). This determination again is to be based on the juror's answers and demeanor and is within the discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence. See Fordham v. State, 513 So.2d 31, 34-35 (Ala.Cr.App. 1986); Jarrell v. State, 355 So.2d 747, 749 (Ala.Cr.App. 1978)."
561 So.2d at 232.
In the present case, the record does not contain any of the voir dire proceedings, only the following exchange between the trial court and the attorneys.
 "[DEFENSE COUNSEL]: Judge, we would also challenge J.F. He [sic] sat on the second row by the wall —
 "[SECOND DEFENSE COUNSEL]: She worked for the family —
 "[DEFENSE COUNSEL]: I guess the maid to the . . . family, and had her car insurance through [the victim's father's] insurance company.
"THE COURT: All right.
 "[DEFENSE COUNSEL]: I think that in this case even though she indicated that she could be fair and impartial that we are involved in the rape of the . . . young daughter, which she knew on a personal basis, I just think that in this case it would be too close, and no matter how she would try to be fair and impartial, by human nature she would be biased towards — wanting to side with [the victim].
 "THE COURT: Okay, based on her responses; however, on questioning during voir dire, I don't believe that her answers would rise to give a basis for challenge. Of course, she could be eliminated through a peremptory. I would deny the challenge to J.F. Are there any other challenges?
 "[DEFENSE COUNSEL]: We would also challenge P.A., who, again, because she admitted she knew the family —
"THE COURT: Uh-huh.
 "[DEFENSE COUNSEL]: And I should think that would be hard to set that aside —
 "THE COURT: All right, on the same basis I would deny the challenge to juror P.A. She indicated that she could render a fair decision.
 "[DEFENSE COUNSEL]: Judge, I think that's the only challenges that we would have." (R. 25, 26.)
From this exchange, it is apparent that the trial court did inquire into the veniremembers' possible prejudice and was satisfied that both veniremembers could reach a fair and impartial decision. Therefore, we find no error in the trial court's denial of the appellant's challenge for cause. SeeKnop, supra.
Applying the principles of Knop to the limited facts presented by the record, we find no reversible error. We note that a close relationship between a veniremember and a victim may give rise to an impression of possible bias. In this regard, we agree with the New Jersey Supreme Court in *Page 17 State v. Jackson, 43 N.J. 148, 203 A.2d 1 (1964), cert. denied,379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572 (1965). In Jackson, the Court reversed based on the lower court's denial of a challenge for cause of a potential juror who had been a close personal friend of one of the prosecuting witnesses. The New Jersey Supreme Court held that although a potential juror may have been wholly sincere in stating that his close relationship with a prosecuting witness would have no bearing on his ability to render an impartial verdict, such a position "runs counter to human nature" and is therefore difficult to accept. In this case we must rely upon the judgment of the trial court because the record does not contain the veniremembers' responses on voir dire.
 II
The appellant next contends that the loss of certain evidence substantially prejudiced his case and denied him due process of law. It appears that the Gadsden Police Department lost or otherwise disposed of the clothing that the victim was wearing on the night of the attack. The appellant maintains that this evidence "may have been exculpatory."
"Absent 'bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' Arizona v. Youngblood,488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988)."United States v. Rodriguez, 917 F.2d 1286, 1291 (11th Cir. 1990), vacated in part on other grounds, 935 F.2d 194 (11th Cir. 1991). In the case at hand, there was no evidence of bad faith on the part of the State. In fact, the appellant's trial counsel expressly disclaimed any bad faith on the part of the authorities. He stated:
 "John and I are not by any means implying any wrongdoing . . . on the part of anybody involved in this. I am sure it was a mistake, just a simple mistake. They thought the case was over; they destroyed the clothing." (R. 20)
Because there was no evidence of bad faith in the handling of the evidence in question, we find that the appellant was not denied his right to due process.
 III
The appellant next claims that the evidence presented at trial was not sufficient to support his conviction. However, there was ample evidence presented by the victim that it was indeed the appellant that raped, robbed, and sodomized her. Testimony of the victim alone is sufficient to establish a prima facie case. Simpson v. State, 401 So.2d 263
(Ala.Cr.App.), cert. denied, 401 So.2d 265 (Ala. 1981). Therefore, there was no error in the trial court's denial of the appellant's motion for judgment of acquittal based on the sufficiency of the evidence.
 IV
The appellant finally contends that the trial court erred by not granting his motion for mistrial. He based his motion on the fact that two of the jurors were seen eating lunch with a veniremember who had been discharged due to his predisposition in the case.
The trial court, outside the presence of the jury, called the veniremember into the court room to question him about the incident. He stated that the appellant's case was not discussed in any way. Contact between a juror and an outside third party does not necessarily require a mistrial. Ex parte Weeks,456 So.2d 404 (Ala. 1884), cert. denied, 471 U.S. 1030,105 S.Ct. 2051, 85 L.Ed.2d 324 (1985). It is within the trial court's discretion to determine whether the contact was prejudicial to the appellant and within the court's discretion to order a mistrial. Newsome v. State, 570 So.2d 703 (Ala.Cr.App. 1989). The trial court's determination will be reversed on appeal only upon a showing of clear abuse of discretion. Ex parteJefferson, 473 So.2d 1110 (Ala. 1985), cert. denied,479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (Ala. 1986).
The trial court held an inquiry into the matter of prejudicial contact. We conclude that the trial court did not abuse its discretion *Page 18 
in not granting the motion for mistrial based on this ground.
For the reasons stated above, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.