The appellant, Marquette Hall, was convicted of committing burglary in the second degree, a violation of § 13A-7-6, Code of Alabama 1975. He was sentenced to 7 years in prison.
The appellant's conviction was based on two witnesses' identification of him as the intruder in Ernestine Washington's house on the morning of January 28, 1991. When Ms. Washington opened the door of her house to go inside, she saw a man walk across the hallway and look at her. She quickly closed the door and told her friend, Ora Manning, that there was a man in her house. Ms. Washington walked to a nearby business to call the police, and Ms. Manning walked to the side of the house to get in her car. While she was at the side of the house, a man ran out of the house in front of her. He stopped and looked at her for a minute, ran into the backyard, and jumped the fence at the rear of the yard.
When the police arrived, Ms. Manning described the clothes that the intruder was wearing. She told Lieutenant Gerald Dawson of the Tuskegee Police Department that the intruder was wearing a gray shirt or jacket and blue jeans or dark pants. Lieutenant Dawson then went out into the neighborhood to look for possible suspects. On the street behind Ms. Washington's house, he noticed the appellant on his porch wearing a gray jacket. He radioed the other investigating officers that he had found a suspect fitting the description given by Ms. Manning. Lieutenant Theodore Moon then drove Ms. Manning and Ms. Washington, separately, by the appellant's house to give them an opportunity to see the appellant. Both women identified the appellant as the same man who was in Ms. Washington's house.
 I
On appeal, the appellant argues that the "show-up" identification procedure used by the police was both impermissibly suggestive and unreliable. The appellant moved to have any testimony of Ms. Manning and Ms. Washington regarding the identification of the appellant suppressed. At the suppression hearing, however, the appellant called only Ms. Manning to testify. Ms. Washington was never questioned at the suppression *Page 1164 
hearing about her identification of the appellant and no objections were made to her trial testimony concerning the identification. Ms. Washington's identification of the appellant was never placed at issue; therefore, the court never addressed the admissibility of Ms. Washington's identification of the appellant. Therefore, we need only determine the admissibility of Ms. Mannings identification.
 " 'In determining the constitutional adequacy of pretrial identification, the central question is whether, under the totality of the circumstances, the identification was reliable.' Brazell v. State, 369 So.2d 25, 28 (Ala.Cr.App. 1978). One man show-ups are, by their very nature, suggestive. Weatherford v. State, 369 So.2d 863
(Ala.Cr.App. 1979), cert. denied, 369 So.2d 873
(Ala. 1979). However, this does not necessarily mean that show-ups are unduly suggestive. Cooley v. State, 439 So.2d 193 (Ala.Cr.App. 1983). Alabama case law has consistently recognized that one man show-ups are an important part of efficient police work and generally show how well the police do their job. Conducted as soon as possible after the commission of the crime, they are a reliable, accurate, and constitutionally acceptable identification procedure. Hobbs v. State, 401 So.2d 276 (Ala.Cr.App. 1981); Carter v. State, 340 So.2d 94 (Ala.Cr.App. 1976); Robinson v. State, 55 Ala. App. 658, 318 So.2d 354 (Ala.Cr.App. 1975); see also, Bates v. United States, 132 U.S. App. D.C. 36, 405 F.2d 1104 (1968). An identification deprives the accused of due process of law only where the procedure used is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' Simmons v. United States, 390 U.S. 377 [384], 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968)."
Allison v. State, 485 So.2d 799, 801 (Ala.Cr.App. 1986) (emphasis original).
In evaluating the possibility of misidentification, the United States Supreme Court, in Neil v. Biggers, 409 U.S. 188,93 S.Ct. 375, 34 L.Ed.2d 401 (1972), set forth the following five factors to be considered:
 "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation."
Neil, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.
Here, Ms. Manning identified the appellant as the intruder within 30 minutes of the commission of the crime. She saw the intruder and provided the police with a description of the intruder. Based on Ms. Mannings description, a police officer found the appellant within minutes. Ms. Manning identified the appellant as the intruder without hesitation. The circuit court correctly denied the appellant's motion to suppress Ms. Manning's identification of him. The witness's identification was reliable and the circumstances surrounding the identification were not impermissibly suggestive.
 II
The appellant further argues that the failure of the prosecution to provide the appellant with fingerprint evidence that it had in its possession was a violation ofBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963). The Brady Court held:
 "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97. To prove a Brady
violation, a defendant must show (1) that the prosecution suppressed evidence, (2) that the evidence was exculpatory, and (3) that the evidence was material. Ex parte Cammon,578 So.2d 1089, 1091 (Ala. 1991).
In his motion for discovery, the appellant requested "copies of all fingerprint . . . evidence and reports of any experts regarding such fingerprints, etc. prepared in connection with this case." The police did lift fingerprints at the crime scene but never had those prints processed. They had reason to believe that those prints were those of the *Page 1165 
intruder, but the police never gave the fingerprint evidence to the prosecution because they determined that it was not needed as evidence because two witnesses had identified the appellant as the intruder. Although the prosecution was not aware that fingerprint evidence had been gathered by the police, because "knowledge of the law enforcement agents is imputed to the prosecutor," Duncan v. State, 575 So.2d 1198,1203 (Ala.Cr.App. 1990), cert. denied, 575 So.2d 1208
(Ala. 1991), we conclude that the prosecution suppressed the fingerprint evidence.
The mere fact, however, that the prosecution suppressed evidence is not sufficient to prove a Brady violation. The evidence suppressed must have been both exculpatory and material. Evidence that may indicate that someone other than the accused committed the crime is both exculpatory and material. Duncan, 575 So.2d at 1203. See also, Ex parteWatkins, 509 So.2d 1064 (Ala. 1984); Ex parte Kimberly,463 So.2d 1109 (Ala. 1984). If the fingerprints found at the crime scene were not the appellant's, that would indicate that the appellant may not have been the intruder. The fingerprint evidence is therefore material because it could cast reasonable doubt on the appellant's guilt. The prosecution was under a duty to provide the appellant with the requested fingerprint evidence. By not doing so, the prosecution violated the principles of Brady v. Maryland.
Because the fingerprints found at the crime scene were never analyzed to determine whether they matched the appellant's, we cannot say whether this evidence was in fact exculpatory. We must remand this case to the Circuit Court for Macon County for that court to determine whether the fingerprints were the appellant's by ordering the state to process the prints. If the fingerprints did not belong to the appellant, then this information is exculpatory and the appellant is entitled to a new trial. See Duncan, supra. If the information is not exculpatory, then the principles of Brady v.Maryland have not been violated and the appellant would not be entitled to a new trial. In any event, the trial court is instructed to file written findings with this court, concerning the fingerprint evidence, within 35 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
All the Judges concur.