The appellant, Gary Stewart Dunning, was convicted of robbery in the first degree in violation of § 13A-8-41, Code of Alabama 1975. He was sentenced to 25 years in the penitentiary.
The state's evidence tended to show that on December 2, 1992, between 10:00 p.m. and 11:00 p.m., the appellant robbed Odessa Jones at her residence in Birmingham. Jones testified as follows: She had just returned home from church with her four children. Shortly thereafter, Jones heard someone coming through her front door. When she entered her living room, she saw two men with guns coming through the front door. Jones attempted to flee through the back door but encountered another man with a gun. She then returned to the living room, where the appellant began shouting, "Where is my damn money?" Jones testified that the appellant was referring to money that her brother Doony (who was in prison) allegedly owed him. Jones offered to look in a closet in the bedroom for money. Finding none, she told the appellant that he could look in her brother's yellow Ford automobile. She stated that the appellant took the keys to the Ford and went outside with Jones's 12-year-old daughter Valencia Simmons to search the car. He told Jones to stay in the bedroom with the other children. After approximately 20 minutes, Jones left the bedroom to look for Valencia. In the meantime, the appellant had left and Valencia had gone to a neighbor's house to call the police. Later, Jones said that her purse and a gold chain were missing from the house.
Officer Tony Joe Barnwell of the Birmingham Police Department testified that he responded to the call and proceeded to Jones's residence. While en route, he observed three black men running away from the general area of Jones's house. Over the radio, Officer Barnwell briefly described their clothing and then proceeded to follow them. A few blocks away, Officer Barnwell came upon the appellant and asked him to approach the police car. Barnwell testified that the appellant was sweating, which was unusual because it was a cool night. Officer Barnwell asked the appellant why he was perspiring, and the appellant responded, "Well, I've got to hurry to get home." Barnwell then patted down the appellant for weapons and placed him in his patrol car. He took the appellant to Jones's residence to see if anyone could identify him as one of the robbers. Jones identified the appellant as one of the men who entered her house and robbed her. Valencia also testified at trial and identified the appellant as one of the robbers.
The appellant raises three issues on appeal.
 I
The appellant first contends that the trial court erred in not removing from the jury a juror who, after the trial had begun, recalled knowing the victim.
During the lunch recess on the first day of trial, a juror brought to the trial court's attention the fact that he remembered the victim's face from high school. However, the juror indicated that he had never really known her personally and that he had not seen her since he graduated from high school in 1976. Furthermore, he said that he could *Page 997 
be totally impartial in the case despite remembering her from high school. The appellant's counsel moved to have the trial court strike the juror from the panel or, in the alternative, to make the juror the alternate. The trial court denied this motion and the juror remained on the jury. Essentially, the appellant argues on appeal that this "relationship" between the juror and the victim rises to the level of a challenge for cause. We hold that it does not.
The test for determining whether a strike rises to the level of a challenge for cause is "whether a juror can set aside their opinions and try the case fairly and impartially, according to the law and the evidence." Marshall v. State,598 So.2d 14, 16 (Ala.Cr.App. 1991). "Broad discretion is vested with the trial court in determining whether or not to sustain challenges for cause." Ex parte Nettles, 435 So.2d 151, 153
(Ala. 1983). "The decision of the trial court 'on such questions is entitled to great weight and will not be interfered with unless clearly erroneous, equivalent to an abuse of discretion.' " Nettles, 435 So.2d at 153. In Marshall v. State,598 So.2d 14 (Ala.Cr.App. 1991), this court held that it was not error for a trial court to deny challenges for cause of two jurors who stated that they knew the victim or her family. One veniremember had been employed as a maid by the victim's family and the other stated that she knew the victim's family.Marshall, 598 So.2d at 16. This court held that this relationship was not grounds for a challenge for cause as long as the juror indicates that he or she can be fair and impartial. 598 So.2d at 16. In the present case, the juror remembered the victim's face from high school, but was not, and had not been, personally acquainted with the victim.
Therefore, the trial did not err in allowing the juror to remain on the jury.
 II
The appellant next contends that the trial court erred in not holding a hearing outside the presence of the jury concerning Jones's in-court identification of the appellant. More specifically, the appellant contends that Jones's identification was the result of a suggestive one-man "show-up."
The appellant was taken into custody minutes after the robbery and was brought to Jones's house alone and in handcuffs. Jones immediately identified the appellant as one of the men who had entered her house and robbed her. The appellant now contends that any testimony regarding Jones's identification should not have been received into evidence. This court thoroughly addressed the law on one-man show-ups inHall v. State, 625 So.2d 1162, 1164 (Ala.Cr.App. 1993):
 " ' "In determining the constitutional adequacy of pretrial identification, the central question is whether, under the totality of the circumstances, the identification was reliable." Brazell v. State, 369 So.2d 25, 28 (Ala.Cr.App. 1978). One man show-ups are, by their very nature, suggestive. Weatherford v. State, 369 So.2d 863
(Ala.Cr.App. 1979), cert. denied, 369 So.2d 873
(Ala. 1979). However, this does not necessarily mean that show-ups are unduly suggestive. Cooley v. State, 439 So.2d 193 (Ala.Cr.App. 1983). Alabama case law has consistently recognized that one man show-ups are an important part of efficient police work and generally show how well the police do their job. Conducted as soon as possible after the commission of the crime, they are a reliable, accurate, and constitutionally acceptable identification procedure. Hobbs v. State, 401 So.2d 276 (Ala.Cr.App. 1981); Carter v. State, 340 So.2d 94 (Ala.Cr.App. 1976); Robinson v. State, 55 Ala. App. 658, 318 So.2d 354 (Ala.Cr.App. 1975); see also, Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968). An identification deprives the accused of due process of law only where the procedure used is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."
 Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968).'
 "Allison v. State, 485 So.2d 799, 801
(Ala.Cr.App. 1986) (emphasis original)."
 "In evaluating the possibility of misidentification, the United States Supreme *Page 998 
Court, in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), set forth the following five factors to be considered:
 " '[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.'
 "Neil, 409 U.S. at 199, 93 S.Ct at 382, 34 L.Ed.2d at 411."
Here, Officer Barnwell observed the appellant running from the general area of Jones's house immediately after receiving the call regarding a burglary in process. Odessa Jones had ample time to observe the appellant while he was in her house. Officer Barnwell brought the appellant to Jones's house and she identified the appellant as one of the robbers within minutes of the robbery. The trial court correctly denied the appellant's motion to hold a hearing outside the presence of the jury on this issue. The victim's identification was reliable and the circumstances surrounding the identification were not impermissibly suggestive.
 III
The appellant finally contends that the trial court erred in denying his motion for a judgment of acquittal because, he says, the evidence presented to the jury was insufficient to support a conviction of robbery in the first degree.
 "In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991); Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493
(Ala. 1985); Cumbo v. State, 368 So.2d 871
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979)."
Underwood v. State, 646 So.2d 692, 695 (Ala.Cr.App. 1993).
Two eyewitnesses, the victim and her daughter, identified the appellant as one of the robbers. The state presented sufficient evidence for the jury to find the appellant guilty of robbery in the first degree. We will not substitute our judgment for that of the jury. Owens v. State, 597 So.2d 734, 737
(Ala.Cr.App. 1992).
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.