WISE, Presiding Judge.
 

 The appellant, Terry Lynn Killings-worth, was convicted of first-degree assault, a violation of § 13A-6-20(a)(5), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to serve a term of thirty-five years in prison.
 
 See
 
 § 13A-5-9(c)(2), Ala.Code 1975. Killingsworth filed
 
 *634
 
 a motion for a new trial, which the trial court denied after conducting a hearing. This appeal followed.
 

 The State presented evidence that, on the morning of January 22, 2008, Killings-worth was driving a vehicle, ran a stop sign at the intersection of Newton Street and Park Avenue, and struck another vehicle. Ultimately, four vehicles were involved in the collision.
 

 Officer Frank Reeves of the Dothan Police Department testified that, at 7:19 a.m. on January 22, 2008, he responded to the scene of an accident involving four vehicles at North Park Avenue and West Newton Street. Killingsworth had been driving one of the vehicles, and Desiree Runge had been driving another one of the vehicles. When Reeves arrived, medical personnel were attending to Runge and Killings-worth.
 

 Reeves testified that he smelled the very strong odor of alcohol on Killingsworth. He also observed what appeared to be a bottle of gin and a can of beer in Killings-worth’s vehicle and therefore took photographs of the interior of Killingsworth’s vehicle.
 

 Based on his investigation, Reeves testified that he believed Killingsworth ran a stop sign. He also stated that the type of damage he saw could happen if a vehicle’s brakes failed. Finally, he testified that he believed Killingsworth was intoxicated and that the level of intoxication impaired his ability to drive and operate a vehicle safety-
 

 Reeves testified that, while he was at the hospital, he asked Killingsworth to provide a blood sample to be tested for blood alcohol content. However, Killings-worth refused to provide such a sample. Reeves also testified that he then obtained a court order so he could obtain a blood sample from Killingsworth and that he videotaped the process of drawing Kill-ingsworth’s blood.
 

 Killingsworth’s blood was drawn at 9:45 a.m. Forensic testing revealed that, at that time, Killingsworth had a blood alcohol content of .157.
 

 William Roger Henderson testified that, on January 22, 2008, Runge was driving him to work. He saw Killingsworth’s vehicle accelerate toward them and then hit their vehicle. Runge was injured as a result of the accident. Henderson estimated that Killingsworth’s vehicle was exceeding the posted speed limit of 30 miles per hour.
 

 Georgia Ann Davis testified that, on January 22, 2008, she saw Killingsworth’s vehicle rapidly approaching a stop sign to her left. She believed the vehicle was traveling at more than 30 miles per hour. Davis testified that she remembered thinking he would not be able to stop and that she did not hear anything to indicate that he was using the brakes on his vehicle. Afterward, she saw Killingsworth’s vehicle hit Runge’s vehicle. Her vehicle was also hit as a result of the collision.
 

 Dawna Jordan testified that she was on her way to work on the morning of the accident when she saw Killingsworth’s vehicle traveling very quickly. She said it was obvious he was not stopping or attempting to stop and was going to hit someone. After the collision, Killings-worth’s head was hanging on the steering wheel and he was not responsive.
 

 Desiree Runge
 
 [1]
 
 testified that, on January 22, 2008, she and Henderson were on North Park driving to work. The next
 
 *635
 
 thing she remembered was waking up at the hospital. She later learned that she suffered numerous injuries as a result of a collision involving Killingsworth.
 

 Kwame Jackson testified that, on the morning of January 22, 2008, he saw Kill-ingsworth’s vehicle on West Newton Street about three blocks from the location of the collision. At that time, the vehicle was going “as fast as it would go.” (R. 165.) Specifically, Jackson testified that “[t]he car was going faster than 30.” (R. 169.) There were two stop signs before the intersection where the accident occurred. Jackson testified that the brake lights on Killingsworth’s vehicle came on one time, but that the vehicle never stopped. He did not see any brake lights as the vehicle approached the intersection with Park Avenue and, afterward, he saw Killings-worth’s vehicle hit other vehicles at the intersection with Park.
 

 Benjamin Kosar testified that, around 7:00 a.m. on January 22, 2008, he saw Killingsworth’s vehicle heading toward a stop sign at a good speed and not slowing down. In fact, he testified that it appeared that the vehicle accelerated when it got to the stop sign. Ultimately, his vehicle was involved in the collision. After the collision, he looked into Killingsworth’s vehicle and observed that Killingsworth appeared to be “on drugs or something.” (R. 227.)
 

 Stuart Keisling, a mechanic and a certified brake technician, testified for the defense that he examined Killingsworth’s vehicle and that it appeared that the vehicle was out of brake fluid. He also testified that the vehicle probably would not have slowed down if the brakes had been applied, but that the brake lights would have come on if the brake pedal had been pushed. Finally, he testified that, in his opinion, the vehicle’s brakes were not functional.
 

 Killingsworth testified that the vehicle he was driving on January 22, 2008, belonged to his sister-in-law and that he sometimes borrowed it. He also testified that, as he was driving on Newton Street, he was traveling at 28-30 miles per hour, that he mashed the brakes as he approached the stop sign, and that the pedal went to the floor and the brakes did not work. Killingsworth stated that he did not have time to grab the emergency brake. He also stated that he had not had problems with the brake system in the vehicle before.
 

 On cross-examination, Killingsworth admitted that he had been drinking alcohol the previous day and night and that he had gone to sleep around 10:30 p.m. or 11:00 p.m. He also admitted that he got up at some point, drank, and went back to sleep, but contended that he was not drunk on the morning of the accident. Finally, he asserted that the gin bottle and beer can that were in the vehicle did not belong to him.
 

 I.
 

 Killingsworth argues that the trial court erroneously denied his motion to remove Juror R.M. from the jury for cause. Specifically, he contends that the trial court should have removed Juror R.M. from the jury because, after the jury was struck and sworn, he advised the court that Officer Frank Reeves was dating his personal secretary and because he had a friendship with Reeves.
 

 During the voir dire proceedings, the following occurred:
 

 “THE COURT: Okay. The issue in this case is going to be, as a juror, is if you hear the evidence from the State— and apparently, Sergeant Reeves will be one of the witnesses. And of course, [defense counsel] will be able to cross-
 
 *636
 
 examine after [the prosecutor] asks him questions. They’ll both ask him questions. Even with that friendship, do you think you can still fairly listen to his testimony and follow the law as I give it to you?
 

 “[R.M.]: I do. And the reason I brought it forth, I just — I didn’t want there to be some excuse for an appeal later or something.
 

 “THE COURT: Right. You’ve done the right thing, but we need to follow up with a few questions.
 

 “And, you know, other than what you just heard, that’s all I know about this case as well. The attorneys obviously know a lot more than I do.
 

 “But if there’s any conflict by the defense — and I don’t know. It’s very common in cases, actually, for a great number of facts, both sides to agree to them. Okay?
 

 “I don’t know if that’s going to be this case or not.
 

 “But if there is a dispute by the defense and the State over some of the evidence or testimony presented by Mr. Reeves, do you think that you could still fairly judge that? You’ll be called upon, as a juror, to reconcile this disagreement. Do you think you can do that, notwithstanding your friendship with him, or your knowledge of him?
 

 “[R.M.]: Yes. I think I can.
 

 “THE COURT: In other words, if you hear all the evidence and you think there’s some point that he’s testified to that’s not correct — I really don’t think there’s going to be an allegation that he would lie. But, you know, one witness says one thing, says A, and he says it’s B, and you think the other witness is correct, would you have any problem going on what the other witness said, besides what Mr. Reeves says?
 

 “[R.M.]: No, I would not.
 

 “THE COURT: And then, finally, let me phrase it this way. If you think the State has proven the defendant’s guilt beyond a reasonable doubt, would you have any problem voting guilty?
 

 “[R.M.]: No.
 

 “THE COURT: And likewise, if you think that the State has not proven the defendant’s guilt beyond a reasonable doubt, would have any problem voting not guilty?
 

 “[R.M.]: No, I would not.
 

 “THE COURT: And again, knowing that you would probably see Sergeant Reeves in the near future as well?
 

 “[R.M.]: Right.
 

 “THE COURT: Any problem voting not guilty?
 

 “[R.M.]: No.”
 

 (R. 51-53.)
 

 “It is good ground for challenge of a juror by either party:
 

 “(1) That the person has not been a resident householder or freeholder of the county for the last preceding six months.
 

 “(2) That he is not a citizen of Alabama.
 

 “(3) That he has been indicted within the last 12 months for felony or an offense of the same character as that with which the defendant is charged.
 

 “(4) That he is connected by consanguinity within the ninth degree, or by affinity within the fifth degree, computed according to the rules of the civil law, either with the defendant or with the prosecutor or the person alleged to be injured.
 

 “(5) That he has been convicted of a felony.
 

 “(6) That he has an interest in the conviction or acquittal of the defendant or has made any promise or giv
 
 *637
 
 en any assurance that he will convict or acquit the defendant.
 

 “(7) That he has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict.
 

 “(8) That he is under 19 years of age.
 

 “(9) That he is of unsound mind.
 

 “(10) That he is a witness for the other party.
 

 “(11) That the juror, in any civil case, is plaintiff or defendant in a case which stands for trial during the week he is challenged or is related by consanguinity within the ninth degree or by affinity within the fifth degree, computed according to the rules of the civil law, to any attorney in the case to be tried or is a partner in business with any partner to such case.
 

 “(12) That the juror, in any civil ease, is an officer, employee or stockholder of or, in case of a mutual company, is the holder of a policy of insurance with an insurance company indemnifying any party to the case against liability in whole or in part or holding a subrogation claim to any portion of the proceeds of the claim sued on or being otherwise financially interested in the result of the case.”
 

 § 12-16-150, Ala.Code 1975.
 

 “The Mai judge is given much discretion in determining whether a potential juror should be struck for cause. According to Rule 18.4(e), Ala. R.Crim. P.:
 

 “ ‘When a prospective juror is subject to challenge for cause or it reasonably appears that the prospective juror cannot or will not render a fair and impartial verdict, the court, on its own initiative or on motion of any party, shall excuse that juror from service in the case.’
 

 “Although § 12-16-150, Ala.Code 1975, lists 12 ‘good ground[s] for challenge of a juror by either party,’ the trial judge may remove a potential juror if probable prejudice exists, even if none of the statutory grounds apply.
 
 Motes v. State,
 
 356 So.2d 712, 718 (Ala.Cr.App.1978). The trial judge’s discretion, however, is not unlimited. This Court stated in
 
 Clark v. State,
 
 621 So.2d 309, 321 (Ala. Cr.App.1992):
 

 “ ‘[Wjhile the statutory grounds for challenges of jurors for cause enumerated in § 12-16-150,
 
 Code of Alabama
 
 1975, are not all inclusive, there must be some ground that indicates probable prejudice in order to disqualify a prospective juror.
 
 Collins v. State,
 
 385 So.2d 993, 999-1000 (Ala.Cr.App.1979), reversed on other grounds, 385 So.2d 1005 (Ala.1980). Where the ground is nonstatutory, it must be “some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court.”
 
 Nettles v. State,
 
 435 So.2d 146, 149 (Ala.Cr.App.), affirmed, 435 So.2d 151 (Ala.1983)....’
 

 “Furthermore, in order to determine whether the trial judge’s exercise of discretion was proper, this Court will look to the questions directed to and answers given by the prospective juror on voir dire.
 
 Ex parte Cochran,
 
 500 So.2d 1179 (Ala.1985).”
 

 Holliday v. State,
 
 751 So.2d 533, 535 (Ala.Crim.App.1999). Additionally, “ ‘[t]he trial judge is in the best position to hear a prospective juror and to observe his or her demeanor.’ ”
 
 McNair v. State,
 
 653 So.2d 320, 324 (Ala.Crim.App.1992) (quoting
 
 Ex parte Dinkins,
 
 567 So.2d 1313, 1314 (Ala. 1990)). Finally,
 

 “[t]he test for determining whether a strike rises to the level of a challenge for cause is “whether a juror can set aside
 
 *638
 
 their opinions and try the case fairly and impartially, according to the law and the evidence.’
 
 Marshall v. State,
 
 598 So.2d 14, 16 (Ala.Cr.App.1991). ‘Broad discretion is vested with the trial court in determining whether or not to sustain challenges for cause.’
 
 Ex parte Nettles,
 
 435 So.2d 151, 153 (Ala.1983). ‘The decision of the trial court “on such questions is entitled to great weight and will not be interfered with unless clearly erroneous, equivalent to an abuse of discretion.” ’
 
 Nettles,
 
 435 So.2d at 153.”
 

 Dunning v. State,
 
 659 So.2d 995, 997 (Ala.Crim.App.1994).
 

 In this case, Juror R.M. clearly indicated that the fact that he knew Reeves and the fact that his secretary was dating Reeves would not prevent him from being fair and impartial. Additionally, he indicated that the fact that he was friends with Reeves would not cause him any problem in passing judgment in Killingsworth’s case. As the trial court specifically observed: “He seems very capable of setting aside this relationship.” (R. 56.) Therefore, the trial court did not abuse its discretion when it denied Killingsworth’s challenge for cause.
 

 II.
 

 Killingsworth also argues that the trial court erred in admitting a video of him and several photographs into evidence. Specifically, he contends that the trial court should have excluded the photographs and the video because they were not relevant to the issue of whether he was intoxicated at the time of the accident, because they were unduly prejudicial, and because the video included inadmissible hearsay.
 

 “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”
 

 Rule 403, Ala. R. Evid. Further,
 

 “[t]he power to make this determination is vested in the trial court.
 
 Zielke v. AmSouth Bank,
 
 703 So.2d 354, 361 (Ala. Civ.App.1996);
 
 see also
 
 C. Gamble,
 
 Gamble’s Alabama Rules of Evidence
 
 § 403. We will not disturb such a determination unless it is clearly an abuse of discretion.”
 

 Hayes v. State,
 
 717 So.2d 30, 37 (Ala.Crim. App.1997).
 

 A.
 

 With regard to the photographs taken at the hospital, those photographs merely show Killingsworth sitting on a hospital bed with his arm held up in front of his face. The photographs were relevant to show Killingsworth’s physical condition at the time he was in the hospital, and they were not unduly prejudicial. Also, during his cross-examination of Reeves, defense counsel used the photographs to point out the fact that Killings-worth was hooked up to medical equipment and that he had injuries that needed to be treated. Therefore, the danger of unfair prejudice did not substantially outweigh the probative value of the photographs.
 

 B.
 

 The video of Killingsworth at the hospital shows him at the time medical personnel drew his blood. Initially, he tells medical personnel he is in a lot of pain and wants to be left alone. After medical personnel talk to him about drawing blood, Killingsworth says he will not authorize them to draw his blood. Eventually, someone tells Killingsworth he does not have to authorize them to draw his blood because they have a court order.
 
 *639
 
 Killingsworth repeatedly states that he refuses to let them draw blood and initially struggles when medical personnel attempt to draw his blood. The video shows several people holding Killingsworth down so they can subdue him and draw his blood. During the struggle, the medical personnel are talking to Killingsworth and trying to calm him down so they can draw his blood. At times in the video, Killingsworth is screaming in pain and yelling obscenities. Eventually, Killingsworth stops struggling, and medical personnel are able to draw his blood.
 

 In this case, the video was extremely relevant to show Killingsworth’s physical condition, how intoxicated he still was after the accident, and how the alcohol affected him. Also, the statements made by Reeves and other medical personnel on the video were not incriminating or accusatory in nature. Further, during the trial, Reeves testified that Killingsworth refused to provide a blood sample and that he had to obtain a court order for a blood sample. Finally, before the State played the video, the trial court instructed the jury that the video was being offered by the State in an attempt to show that Killingsworth was intoxicated and to show how a person who was intoxicated would behave; that it was the jury’s decision as to whether to accept the State’s version of events; and that the jury could not hold the fact that Killings-worth used profanity against him. For these reasons, the danger of unfair prejudice did not substantially outweigh the probative value of the video.
 

 Killingsworth also argues that the trial court should have excluded the video because it contained inadmissible hearsay. However, we initially note that his statements in the video are definitionally non-hearsay.
 
 See
 
 Rule 801(d)(2)(A), Ala. R. Evid. Moreover, the statements made by Reeves and medical personnel on the video were not offered to prove the truth of the matter therein. Rather, they were merely statements that put Killingsworth’s conduct and statements into context and that were used to calm Killingsworth while they were attempting to draw his blood. Therefore, they were also definitionally nonhearsay.
 
 See
 
 Rule 801(c), Ala. R. Evid.
 

 For these reasons, the trial court did not err when it admitted the photographs and video into evidence.
 

 III.
 

 Killingsworth further argues that the trial court erred in denying his motion to suppress the State’s blood alcohol content evidence.
 

 A.
 

 First, Killingsworth contends that the State did not establish that there was probable cause to support the issuance of an order to obtain a sample of his blood.
 

 “ ‘ “ ‘In reviewing the correctness of the trial court’s ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court.’ ”
 
 Kennedy v. State,
 
 640 So.2d 22, 26 (Ala.Cr.App.1993), quoting
 
 Bradley v. State,
 
 494 So.2d 750, 761 (Ala.Cr.App.1985), aff'd, 494 So.2d 772 (Ala.1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). A trial court’s ruling on a motion to suppress will not be disturbed unless it is “palpably contrary to the great weight of the evidence.”
 
 Parker v. State,
 
 587 So.2d 1072, 1088 (Ala.Cr.App.1991).’
 

 “Rutledge v. State,
 
 680 So.2d 997, 1002 (Ala.Cr.App.1996).”
 

 Maples v. State,
 
 758 So.2d 1, 41 (Ala.Crim.App.1999).
 

 
 *640
 
 “ ‘ “Probable cause deals with probabilities, not legal technicalities. It is grounded upon those practical, factual considerations of everyday life upon which reasonable and prudent men act.
 
 Brinegar v. United States,
 
 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948).”
 
 Garter v. State,
 
 405 So.2d [957] at 959 [(Ala.Crim.App.1981)]. “Probable cause does not require an officer to compile an airtight case against a suspect. Rather, it deals with the probable consequences of all the legitimate facts considered as a whole.”
 
 Williams v. State,
 
 440 So.2d 1139, 1145 (Ala.Cr.App.1983).’
 

 “Callahan v. State,
 
 557 So.2d 1292, 1304-05 (Ala.Crim.App.1989).”
 

 Snyder v. State,
 
 893 So.2d 488, 534 (Ala.Crim.App.2003). Finally,
 

 “[i]n assessing the adequacy of a search warrant affidavit, ‘[t]he focus of judicial inquiry should not be upon a “grading of the paper” of the affiant, but rather, should be based upon whether the constitutional rights of the party subject to the search will be violated if the warrant is issued.’
 
 United States v. Sorrells,
 
 714 F.2d 1522, 1528 (11th Cir.1983).”
 

 Gord v. State,
 
 475 So.2d 900, 905 (Ala.Crim.App.1985).
 

 During the hearing on the motion to suppress the blood test results, Reeves testified that he obtained the warrant after Killingsworth refused to give a blood sample. In his affidavit in support of the issuance of the search warrant, Reeves stated:
 

 “I am Corporal J. Frank Reeves, a sworn Dothan Police officer and Traffic Investigator, working on 01-22-2008 at approximately 07:20 was dispatched to a Motor Vehicle Crash at the intersection of North Park Avenue and West Newton Street in the City Limits of Dothan, Alabama. I arrived at 07:24 and saw a four vehicle -wreck that encompassed the whole intersection. Officer Saxon was the first on the scene at 07:21 and had indicated that there were two SEVERE INJURIES at this location.
 

 “I went initially to a Purple Ford Mustang and saw a White Male sitting in the Drivers Seat and saw a GIN bottle on the arm rest. The driver identified at the hospital to me by Cpl. Jeremy Collins as White Male Mr. Terry Lynn Killingsworth, 01-06-1973, was slumped over the steering wheel unconscious and had a possible head injury. Paramedics attended to him and immediately transported him to the South East Alabama Medical Center for treatment. Mr. Killingsworth was asked at the South East Alabama center to submit a sample of his blood to be analyzed for levels of alcohol and controlled substances. Mr. Killingsworth refused to voluntarily give a sample for analysis.
 

 “In my investigation of the crash I determined through witness statements that the vehicle operated by Mr. Kill-ingsworth was traveling West on West Newton Street and ran the stop sign and collided with a Silver Mitsubishi and pushed the Mitsubishi into a Volvo SUV and then into a Nissan Altima. The injuries sustained by the driver of the Mitsubishi required surgery and some facial reconstruction and the passenger of the Mitsubishi is complaining of a back injury.
 

 “Due to my investigation of the accident I believe that Mr. Killingsworth was at fault in this crash and that Alcohol and or Controlled Substances may have contributed to this accident.
 

 “Affiant shows that based on the above and foregoing facts and information, affiant has probable cause to believe that the above described property
 
 *641
 
 is concealed upon the aforesaid person described and is subject to seizure and makes this affidavit so that a warrant may be issued to search the said person.”
 

 (C.R. 262.) The information included in the affidavit established a nexus between the accident and Killingsworth and the possibility he was under the influence of alcohol and/or a controlled substance at the time of the accident. Therefore, the information included in the affidavit established probable cause to support the issuance of the search warrant to obtain a sample of Killingsworth’s blood.
 

 Moreover, “[ejvidence obtained by officers acting in objectively reasonable reliance on a warrant issued by a neutral and detached magistrate need not be excluded, even if the warrant is ultimately found to be invalid.
 
 United States v. Leon,
 
 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).”
 
 Tolbert v. State,
 
 718 So.2d 731, 734 (Ala.Crim.App.1997).
 

 “In
 
 Leon,
 
 the United States Supreme Court recognized four circumstances in which the good-faith exception was inapplicable: (1) when the magistrate or judge relies on information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) when the magistrate wholly abandons his judicial role and fails to act in a neutral and detached manner; (3) when the warrant is based on an affidavit so lacking [in] indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.”
 

 Straughn v. State,
 
 876 So.2d 492, 500 (Ala.Crim.App.2003).
 

 The record does not indicate that the affidavit contained false information or that the issuing judge did not act in a neutral and detached manner. Also, the affidavit was not so lacking in indicia of probable cause and the warrant was not so facially deficient that officers could not have reasonably relied upon it. Because the officer relied upon the search warrant in good faith, the evidence he seized pursuant to that warrant was admissible even if the search warrant was not valid.
 

 For these reasons, the trial court did not err in denying Killingsworth’s motion to suppress on this ground.
 

 B.
 

 Second, Killingsworth contends that the trial court erred in admitting the results of the testing because the State allegedly did not establish a chain of custody for the blood sample. However, he did not present this argument to the trial court until after the evidence had been introduced, the State had rested, and he had made a motion for a judgment of acquittal. Therefore, his objection was not timely, and his argument is not properly before this court.
 
 See Harris v. State,
 
 821 So.2d 177 (Ala.2001).
 

 IV.
 

 Finally, Killingsworth argues that the State did not present sufficient evidence to support his conviction. Although he couches his argument in terms of the sufficiency of the evidence, he actually challenges the weight of the evidence.
 

 “[I]n
 
 Johnson v. State,
 
 555 So.2d 818, 819-20 (Ala.Cr.App.1989), this court noted the difference in ‘sufficiency’ and ‘weight’ as follows:
 

 “ ‘The
 
 weight
 
 of the evidence is clearly a different matter from the
 
 sufficiency
 
 of the evidence. The
 
 sufficiency
 
 of the evidence concerns the question of whether, “viewing the evi
 
 *642
 
 dence in the light most favorable to the prosecution, [a] rational factfinder could have found the defendant guilty beyond a reasonable doubt.”
 
 Tibbs v. Florida,
 
 457 U.S. 31, 37, 102 S.Ct. 2211, 2215, 72 L.Ed.2d 652 (1982). Accord,
 
 Prantl v. State,
 
 462 So.2d 781, 784 (Ala.Cr.App.1984).
 

 “ ‘In contrast, “[t]he
 
 ‘weight
 
 of the evidence’ refers to ‘a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.’ ”
 
 Tibbs v. Florida,
 
 457 U.S. at 37-38 [102 S.Ct. at 2216] (emphasis added). We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.
 
 E.g., Franklin v. State,
 
 405 So.2d 963, 964 (Ala.Cr.App.), cert. denied, 405 So.2d 966 (Ala.1981);
 
 Crumpton v. State,
 
 402 So.2d 1081, 1085 (Ala.Cr.App.), cert. denied, 402 So.2d 1088 (Ala.1981);
 
 Nobis v. State,
 
 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala.1981). ‘“[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.’”
 
 Harris v. State,
 
 513 So.2d 79, 81 (Ala. Cr.App.1987) (quoting
 
 Byrd v. State,
 
 24 AlaApp. 451, 136 So. 431 (1931)).[’]
 

 “(Emphasis in original.)
 
 See Smith v. State,
 
 604 So.2d 434 (Ala.Cr.App.1992);
 
 Pearson v. State,
 
 601 So.2d 1119 (Ala.Cr.App.1992);
 
 Curry v. State,
 
 601 So.2d 157 (Ala.Cr.App.1992).”
 

 Zumbado v. State,
 
 615 So.2d 1223, 1240-41 (Ala.Crim.App.1993). We will not invade the province of the jury and reweigh the evidence in this case. Therefore, Killings-worth’s argument is not well-taken.
 
 [2]
 

 For the above-stated reasons, we affirm the trial court’s judgment.
 

 AFFIRMED.
 

 WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.
 

 [1]
 

 . At the time of the trial, Runge was married to William Roger Henderson and was identified by the name Desiree Henderson.
 

 [2]
 

 . To the extent Killingsworth may challenge the sufficiency of the evidence, his argument is without merit. Although the evidence was conflicting, "[tjhe weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury.”
 
 Smith v. State,
 
 698 So.2d 189, 214 (Ala.Crim.App.1996), aff'd, 698 So.2d 219 (Ala.1997).